. Commonwealth to use, Appellant, *v.* Cashman.

*Partition—Sale of land—Recognizance—Evidence—Declarations.*

Where recognizances in partition have been duly given and the surety approved, the decree of the court operates, as fully as a formal conveyance would do, to divest every interest, share or estate in the land formerly held by the cotenants, and to vest the entire title in severalty in the allottee.

Where an allottee in partition gives a recognizance to his cotenants to pay the amounts immediately coming to them, and also a recognizance to pay to them the principal of the dower at the death of the widow, and thereafter by an instrument in writing he conveys several

acres to a sister, one of the cotenants, in which it is recited that the acres given are to "be as a recompense for the share that she has coming out of said farm as her share," which the allottee "has to pay," the paper will be construed so as to cover the whole interest of his sister, including her interest in the dower fund, and parol testimony will not be admitted to show that the share referred to was the share payable to the sister in the first place, and that it did not include her share in the widow's dower.

In such a case declarations made by the allottee that he owed his sister's children something, are inadmissible where it appears that they were vague and indefinite, that they were made as the result of efforts to compromise the dispute, and that there was no consideration moving to the allottee for any new promise to pay if the declarations could be regarded as a promise.

Argued Oct. 23, 1906. Appeal, No. 2, Oct. T., 1906, by plaintiff, from judgment of C. P. Bedford Co.; April T., 1885, No. 212, on verdict for defendants in case of Commonwealth to use of Charles Barnett, Susan Hoover, Wm. M. Barnett and John M. Barnett, heirs of Ann Barnett, deceased, one of the heirs of Michael Cashman, deceased, v. John B. Cashman and Jacob Biddle. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Scire facias sur recognizance. Before WOODS, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) exclusion of the offer of evidence quoted in the opinion of the Superior Court; (5) in giving binding instructions for defendant.

*J. H. Longenecker*, with him *D. S. Brumbaugh*, for appellants. —The doctrine of accord and satisfaction does not apply: Brockley v. Brockley, 122 Pa. 1 ; Mechanics' Bank v. Huston, 11 W. N. C. 389 ; Martin v. Frantz, 127 Pa. 389 ; Com. to use v. Cummins, 155 Pa. 30 ; Krauser v. McCurdy, 174 Pa. 174 ; Hosler v. Hursh, 151 Pa. 415 ; Rohrer v. Schaefer, 32 Pa. C. C. Rep. 417.

*E. M. Pennell*, with him *Alvin L. Little*, for appellee, cited : Centenary M. E. Church v. Clime, 116 Pa. 146 ; Book v. New Castle Wire Nail Co., 151 Pa. 499.

OPINION BY HEAD, J., February 25, 1907 :

Michael Cashman died in 1870, intestate, leaving him to survive a widow, four daughters, of whom Ann Barnett, the plaintiff's intestate, was one, and one son, John B. Cashman, the defendant. After his death partition proceedings were instituted in the orphans' court of Bedford county to part and divide the real estate of which he had died seized. As a result of these proceedings the said court, on September 4, 1871, entered a final decree allotting the land to John B. Cashman, at his bid, and directing him to enter into a recognizance to secure the payment, within one year, to each of his sisters of her respective share in the two-thirds of the valuation money, and a like recognizance securing the payment annually to the widow during life of the interest on the remaining one-third, and at her death, the principal thereof to the heirs of Daniel Cashman, deceased. The recognizances having been duly given and the surety approved, there can be no doubt the decree of the court operated, as fully as a formal conveyance would have done, to divest every interest, share, or estate in the land formerly held by the cotenants, and to vest the entire title in severalty in the allottee, John B. Cashman. Consequently any mention thereafter made by any one of the recognizees of her share "in the land," or "coming out of said farm," or other like expression, would, naturally and necessarily, be understood as a reference to her share of the valuation money, into which the land, so far as they were concerned, had been transmuted by force and effect of the court's decree.

On February 17, 1873, John B. Cashman of the one part, and Samuel Barnett and wife (she being the sister of John and one of the recognizees already referred to) of the other part, entered into a written agreement by the terms of which Cashman covenanted to convey to Samuel Barnett in fee simple a portion of the land the former had acquired by the partition proceeding. The description of the land to be conveyed, the consideration therefor and the manner of payment were as follows : "To-wit, about ten acres, more or less, to be measured from the southwest corner of said farm the same to include about four acres woodland. Seven acres of the above mentioned land to be given to the said Barnett and wife the same

to be as a recompense for the share that she (the said Mrs. Barnett) has coming out of said farm as her share, which said John B. Cashman has to pay.   The said Barnett to pay for the balance over and above the seven acres above mentioned at the rate of thirty-three dollars an acre."

A surveyor was procured who ran off a piece of land containing something over thirteen acres.   We understand the conveyance called for by the agreement was never made, but we do not regard that as material because it does appear that Barnett and wife took possession of the piece so cut off, made permanent improvements thereon and have ever since remained in the undisturbed occupation and ownership of it.

It is to be observed that at the date of the agreement no part of her share in the valuation money had yet been paid to Ann Barnett by her brother; the whole of it then remained, as it had from the date of the final decree, secured by both of the recognizances then given.   Thus matters stood until, the widow having died in 1883 or 1884, this action of scire facias, on the recognizance due at her death, was begun, the writ having issued on March 14, 1885.   This promptly brought an affidavit of defense averring in detail the payment of the full share of the plaintiff in the valuation money, secured, inter alia, by the recognizance in suit, by the sale of the real estate as provided in the article of agreement, and the consequent extinguishment of the defendant's debt.   This seems to have suspended any further proceedings during the lifetime of the plaintiff.   On June 3, 1904, nearly twenty years after the beginning of the action, her death was suggested, her children substituted as parties plaintiff and the cause pushed to trial.   At the conclusion of the trial both parties seem to have agreed that the construction of the contract which fixes the rights of both, was purely a question of law for the court.   The court so held in affirming the plaintiff's first point which flatly declared that "the written contract offered in evidence by the defendant is to be construed exclusively by the court."   If this point correctly stated the law, and we agree with the learned court and counsel that it did, upon what theory can it be successfully contended that the court erred in rejecting the parol testimony of the witness Barnett?   (First assignment) The question asked the witness which was objected to and excluded was as

follows: " Q. I wish you to state whether when this agreement was made in which it is provided that seven acres of land should be paid out of the share of your wife, whether that referred to her share payable in the first place or whether it related to the widow's dower?"

This witness was not privileged either to restate the contract from his own recollection of a transaction that had occurred a quarter of a century before, nor was he competent to take up the written contract and say to what the parties referred or what they sought to express when using the terms they adopted. It was to escape just such dangers that the parties, years before, had taken the precaution to enshrine their meaning and intentions in the enduring form of a sealed instrument of writing. It is not even claimed that the execution of the contract was induced by fraud or that by reason of any accident or mistake anything was omitted from or inserted in it contrary to the intention of the parties. Nor could it well be asserted that the written agreement exhibited any ambiguity, latent or patent. Every word in it would easily be found in the vocabulary from which is coined the everyday speech of ordinarily intelligent people. Under such circumstances the trial judge could do naught else, in discharging the duty imposed exclusively on him, but decline the proffered aid of the witness. The language used by Mr. Justice MITCHELL in Book v. Wire Nail Co., 151 Pa. 499, seems peculiarly applicable to the question now before us, and we quote: " There was no attempt made by defendants to show any fraud, accident or mistake in the making of the contract sued upon, nor do we find in the writing any latent ambiguity or uncertainty of subject-matter. Parol evidence was therefore not admissible to vary or control the meaning of the words used, and there was no occasion for the introduction of it to show the circumstances under which the contract was made as explanatory of the meaning of the words. They were ordinary words used in their ordinary sense, and the meaning was to be gathered from the writing. To admit the evidence offered would be only to give the jury an opportunity to rewrite the contract." We have not overlooked the fact that the objection made was aimed rather at the competency of the witness than the admissibility of the evidence; but inasmuch as we approve of the act of the court in rejecting the testimony, the

form of the objection which produced that result is immaterial. The first assignment is not sustained.

Nor can we disagree with the construction of the paper adopted by the learned court below. The parties distinctly agreed and clearly stated that the consideration to be paid to the defendant, for seven acres in bulk, was the share of Ann Barnett " coming out of said farm, which said John B. Cashman has to pay." She had but one share, and that was her share in the valuation money. She had formerly but one share in the land, and when money was substituted for land, by the transforming effect of the partition proceeding, her one share remained relatively the same as before. That the money was to be paid at different times, and that each payment was secured by a separate recognizance, seems to us of no consequence. Had there been but one recognizance to secure the money payable in one year, as well as at the death of the widow, or had there been more than two, each securing payment of an installment, the result would not have been different. The agreement must, in either case, have been construed just as we now construe it. Had it been the understanding of the parties that the sister was only to release or regard as paid that part of her share then due, it would have been most easy to say so. But the paper so plainly declares that she was to give up her entire share for the seven acres of land that we cannot declare otherwise unless we undertake to rewrite their agreement. The second, fourth and fifth assignments are overruled.

There was evidence that shortly before the trial the defendant Cashman had admitted to certain people that he owed some money to the heirs of his sister Ann, and would pay them. The declarations are somewhat vague and indefinite; they were made as the result of efforts to compromise the dispute; there was no consideration moving to Cashman for any new promise to pay if they can be so regarded. Taking them altogether they seem to have indicated a willingness on his part to open up the entire transaction, and recognize the claim of the plaintiffs to be allowed what would be due on the second recognizance if they in turn would agree to pay for all the land they got above ten acres, which, he insisted, was all the parties had in mind when the paper was signed. As nothing resulted from these

attempts to compromise, we are of the opinion that these declarations would not have warranted the court in departing from the well-grounded conclusion that the verdict in the present case ought to be but a declaration of the rights of the parties, as they themselves had determined them to be, in the instrument of writing solemnly executed a generation ago.

Judgment affirmed.