151      499
f 32 SC ¹463

# Book v. New Castle Wire Nail Co., Appellant.

*Written contract—Parol evidence to vary.*

Where the words of a written contract are ordinary words used in their ordinary sense, and there is no latent ambiguity or uncertainty of subject-matter, and no allegation of fraud, accident or mistake, parol evidence is inadmissible to vary or control the meaning of the words, or to show the circumstances under which the contract was made as explanatory of the meaning of the words.

Where a written contract provided for driving a well for defendant guaranteeing " to get the water from the bed rock, unless we should find good water, acceptable to you, at a less depth," parol evidence is inadmissible to show by the declarations of the parties or the circumstances surrounding the making of the contract that the water referred to in the contract was intended and meant to be good water, to be used for drinking purposes.

Where, under such contract, the contractors drive the well to the bed rock and get water, they are entitled to recover, although the water is salt and unfit for drinking purposes.

Argued Oct. 11, 1892. Appeal, No. 138, Oct. T., 1892, by defendant, from judgment of C. P. Lawrence Co., Sept. T., 1891, No. 27, on verdict for plaintiff. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit for drilling well for water.

On the trial, before McMICHAEL, J., plaintiff gave the following writing in evidence, signed by plaintiff and with a written acceptance by defendant:

" We propose to drill or drive a well on your premises on a spot convenient for you, and guarantee to get the water from the bed rock, unless we should find good water, acceptable to you, at a less depth, in which case we would finish the well to that point. It is understood we are to do all the labor of drilling or driving the pipe, and you are to supply the pipe, of sizes 8 inches and 6 inches, of such lengths of each as shall be found necessary. After beginning the work we are to work continually until the job is completed. Our prices for the labor and tools is $1.25 per foot for the finished well, whatever the depth, be it more or less."

From plaintiff's evidence it appeared that at the depth of about seven or eight feet from the surface they got water in quicksand and blue mud, but the water was not good ; at one hundred and twenty-seven feet they came to the bed rock. At two hundred and eighty feet they got some little water that was irony and gassy, and at three hundred and thirty-two feet they found salt water. They then stopped drilling. None of the water so found was fit, or could be used, for drinking purposes.

Frank Book, one of the plaintiffs, being called, and having testified for plaintiffs, and on cross-examination having testified that plaintiffs, after having ceased work on the well, went to defendant's office to see about their pay, and there had a convesation, defendant made the following offer:

Defendant's counsel propose to prove by the witness on the stand that he stated there that they had guaranteed the water,

and the water mentioned was drinking water.  This for the purpose of proving an admission by him that the water found was not the kind of water that they had agreed by their contract to furnish.

Objected to by plaintiff's counsel as incompetent.

The Court: The contract mentioned is in writing, and the objection is sustained, because it is not competent for the witness to undertake by his testimony to change it or to interpret it.  Exception. [1]

Defendant's counsel then offered to prove by the testimony of John Stevenson that he negotiated the terms of the contract with the parties, plaintiffs, and to show that at the time of the negotiation of the contract it was expressed and distinctly understood by both parties that the water referred to in the contract was intended and meant to be good water, and was to be used for the purposes of drinking water for the employees about the factory.  They further offered to show that at the time of making this contract the New Castle Wire Nail Company had a large number of employees, to whom an abundant supply of good drinking water was necessary for their convenience and comfort.  That that was stated and known to the plaintiffs, and that the water referred to in the contract was meant to be water of that character, as stipulated in the contract, and was to supply these operatives or employees with water for drinking purposes.  Further to show that the price stipulated was fixed, as it was, because of the fact, that unless such water (as) was contemplated by the parties was procured, the Wire Nail Company were to pay nothing—simply to furnish the pipes.  And this, not for the purpose of contradicting, changing nor altering the written contract, but for the purpose of giving the jury the circumstances under which it was made, as explanatory of the meaning of the words used by the parties in the contract which they did make, or was made.

The Court: That means that the terms of the contract are to be explained by parol evidence?

Mr. Kurtz: By the surrounding circumstances.

Objected to as the effect of the offer would be to contradict the written contract.  Objection sustained, exception. [2]

Defendant's counsel next offered to show that, after the completion of the well, plaintiffs, when in conversation with de-

fendant about their compensation for boring the well, admitted the price was high but that it was on account of the risk they run; that if they did not get the water there was to be no pay, which water was the water contemplated by the parties for drinking purposes. This for the purpose of showing the contemporaneous construction of the written agreement by the parties at or immediately after the making of the contract; for the purpose of showing the interpretation of the contract by the parties immediately after the completion of the well. Objected to, objection sustained, exception. [3]

Defendant's counsel also proposed to show that before the well was completed, in speaking of the price fixed by the contract for the boring of the well being high or excessive, plaintiffs made the same statement, it was not—in view of the fact or on account of the fact that the payment was upon the event or the issue or condition of their getting water, which water was of the kind before stated. Objected to, objection sustained, exception. [4]

The court charged in part as follows :

" The court reserve the question, whether under the contract consisting of the proposition in writing and its acceptance, as offered in evidence by the plaintiffs, and the undisputed fact that the plaintiffs did not find in the well, or obtain in the well they drilled, good water for drinking purposes, and also the fact testified to by one of the plaintiffs, that it was water for drinking purposes the defendant desired to procure from the well, that then the plaintiffs are entitled to recover. That is, the court reserve the question, whether under these facts the plaintiffs are entitled to recover at all, with the right to enter judgment for the defendant non obstante veredicto, in case the court should come to the conclusion that the plaintiffs have not kept their contract. That leaves, gentlemen, nothing for you to do. The instruction of the court is, that you find a verdict for the plaintiffs of $430.49, and believing that you need not leave your seats in order to obey that I have written the verdict." [5]

The court, in an opinion filed, entered judgment on the verdict. Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence     (5) instructions, quoting bills of exceptions and charge.

*D. B. Kurtz, L. T. Kurtz* with him, for appellants.—Though parol evidence is inadmissible to contradict or vary the terms of a written agreement of guaranty, yet such explanations of the subject-matter may be proved, as shall give those terms their intended effect: Aldridge v. Eshleman, 46 Pa. 420; Dubois v. Bigler, 95 Pa. 203. College v. Kerr, 3 Brewster, 196; Clarke v. Adams, 3 W. N. 381; Centenary Church v. Cline, 116 Pa. 146; Barnhart v. Riddle, 29 Pa. 92; Gould v. Lee, 55 Pa. 99; Reitenbaugh v. Ludwick, 31 Pa. 131; Morris's Ap., 88 Pa. 368; Lycoming Mut. Ins. Co. v. Sailer, 67 Pa. 108; Merriam v. United States, 107 U. S. 437; Nash v. Towne, 5 Wallace, 689; Selden v. Williams, 9 Watts, 9; Lehigh C. & Nav. Co. v. Harlan, 27 Pa. 429; Topliff v. Topliff, 122 U. S. 121; Dist. of Columbia v. Gallaher, 124 U. S. 505; Roberts v. Beatty, 2 P. & W. 63, 65; Lacy v. Green, 84 Pa. 514.

*Lev. McQuistion, H. G. Wasson* with him, for appellee, cited 1 Gr. Ev. 351, 275; Baer's Ap., 127 Pa. 360; Jones v. West. Pa. Gas Co., 146 Pa. 204; Shafer v. Senseman, 125 Pa. 310.

OPINION BY MR. JUSTICE MITCHELL, October 31, 1892.

There was no attempt made by defendants to show any fraud, accident or mistake in the making of the contract sued upon, nor do we find in the writing any latent ambiguity or uncertainty of subject-matter. Parol evidence was therefore not admissible to vary or control the meaning of the words used, and there was no occasion for the introduction of it to show the circumstances under which the contract was made as explanatory of the meaning of the words. They were ordinary words used in their ordinary sense, and the meaning was to be gathered from the writing. To admit the evidence offered would be only to give the jury an opportunity to rewrite the contract.

The subject-matter of the agreement was the drilling of a well to get water, and the plaintiff's undertaking was to drill it to the bed rock unless suitable water should be obtained sooner. Let it be conceded that suitable water meant water fit for drinking, nevertheless the guaranty of the plaintiffs does not extend to such water. No doubt both parties expected the bed rock water to be good, but no guaranty was made as to it. Both parties assumed the fact and took the risk of it.

The guaranty was " to get the water from the bed rock," which is equivalent to " the bed rock water," and if the contract had stopped here we do not suppose a claim could be fairly made for any more extended meaning.  But the contract continues " unless we should find good water, acceptable to you, at a less depth," and appellants argue that the definite article " the " in the first clause should be construed to mean the " good " water specified in the second.  But we cannot ascribe so much force to the definite article.  The guaranty is to get " the water from the bed rock," and the next clause is a condition in relief not in extension of the plaintiff's duty.  It prescribes the condition on which their undertaking to go to the bed rock shall be excused and that condition is the finding of good acceptable water at a lesser depth.  If " the water " in the guaranty meant already in the understanding of the parties, good water acceptable to the defendants, it would have been unnecessary to specify it as good and acceptable in the next clause.  The natural expression would have been " the water " repeated, or " said " or " such " water.  In fact the argument of appellant reverses the true order of construction, and enlarges the guaranty by a clause that was meant to reduce it.  If the meaning contended for had been the intention of the parties the order of the words would have been inverted, and the guaranty would have been to get good acceptable water from the bed rock, unless " the water," i. e. such water should be found at a less depth.  That at least would have been the natural and obvious way of expressing such intent.

The argument is adroitly put as showing a failure by plaintiffs to complete their undertaking, but the real object of the offer of defendants was to write into the contract a most material condition, i. e. that if no good water should be found in or above the bed rock then defendants should pay nothing.  It is not in accordance with experience that such a condition should be left unexpressed.  A party engaging to have a thing done for him is expected to pay for it, and so universal is this rule that no express promise need be proved and if no price is named the law implies a promise to pay what it is reasonably worth.  Any other contract than this is so exceptional that it is hardly supposable that the party whom the law will presume to be liable, will not see to it that the condition which is to re-

lieve him from liability is fully expressed.   To insert such a condition into a written contract should require the clearest evidence that such was the actual agreement of the parties and that its omission from the writing was the result of fraud, accident or mistake.

This is not such a case, and the learned judge was right in excluding the evidence.

Judgment affirmed.