Penn-Ohio Gas Company, Appellant, *v.*
Franks's Heirs et al.

234

Argued March 24, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Rufus S. Marriner,* with him *John F. Wiley,* of *Marriner & Wiley,* for appellant.

*Ellsworth Jordan,* with him *E. Dale Field,* of *Sterling & Field,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, May 25, 1936:

The Penn-Ohio Gas Company operated two gas wells under a written lease, executed on October 4, 1916, covering 76 acres of land. The lease provided: "That the grantors . . . do hereby grant and convey . . . all the oil and gas in and under the following described tract of land, and also all the said tract of land for the sole and only purpose and with the exclusive right of drilling and operating thereon . . ., and also all such other privileges as are necessary for . . . said operations, . . . for the term of five (5) years . . . and

as much longer as the said premises are being drilled or operated for the production of oil or gas . . . yielding and paying to the grantors the one-eighth share of all the oil saved from that produced . . . and should any not producing oil, produce gas in sufficient quantities to justify the Grantee marketing the same, the Grantors shall be paid at the rate of Three Hundred ($300) Dollars per year for such gas well, payable quarterly in advance, so long as said well is utilized off the premises." The annual payments for the two gas wells in operation were subsequently reduced to $250. The provision for forfeiture was as follows: "That the Grantors may declare a forfeiture of this grant, unless one producing well shall be completed . . . within Three Months from the date hereof, or unless the Grantee shall pay a rental of Twenty-five cents per acre, in advance, for each additional three months such completion is delayed . . . until one producing well is completed." In a subsequent paragraph it is provided: "All payments hereunder may be made direct to the Grantors, . . . and this grant shall not be forfeited for nonpayment of rental thereon, unless the Grantee shall refuse or neglect to pay the same for ten days after having received written notice from the Grantors of intention to forfeit." The Grantee was given the right to cancel and surrender the lease, if it determined that further investigation and development were not warranted.

In the early part of 1933 the Gas Company became in arrears in its quarterly payments and on December 30, 1933, the payments due in August, October and November of 1933 still remained unpaid. After repeated efforts to secure payment in full of the amount due, the present lessors, Franks's heirs, having received the payment due August 15, 1933, on January 11, 1934, notified the Gas Company by letter of their intention to forfeit its rights to operate the wells unless "royalty checks" were kept paid up to date. As payment of the amount due was not made, on January 23, 1934, the heirs notified the com-

pany that its rights under the lease were forfeited and demanded that the lease be returned. At that time three quarterly payments amounting to $187.50 were still overdue. Thereafter the heirs ordered the purchaser of the gas to make payment to them, and the Gas Company brought a bill in equity to restrain them from interfering with its operation of the gas development.

The question was whether appellees could forfeit the rights of appellant under the lease for the nonpayment of the stipulated sum to be paid for each gas well, from which gas was sold or marketed. Appellant contends that the provision permitting forfeiture for nonpayment of rental after receipt of ten days' written notice does not apply to payments due on gas wells but solely to acreage rentals; and that if it does, to allow forfeiture would be unconscionable and inequitable. The court below found to the contrary, holding that the terms of the forfeiture clause in dispute are not limited to the acreage rentals due prior to the completion of one producing well, but include the payments due on wells the gas from which was utilized off the premises. The court further decided that while in its opinion these payments are in reality "rentals" and have been treated as rent by this court, yet even if construed to be royalties, they would fall within the meaning of the forfeiture clause, since "out of justice and equity the case ought to be decided on the theory they are rent." It dismissed the gas company's bill, and this appeal followed.

We agree that the term by which these payments are designated does not affect the decision of this case, and that it is not necessary at this time to determine their precise character, but we cannot agree with the interpretation by the court below of the forfeiture provision.

Under the terms of the lease a defeasible title to the oil and gas in place in and under the described tract of land vested in the appellant. In *Barnsdall v. Bradford Gas Co.*, 225 Pa. 338, 343, this court, in deciding the rights arising out of a somewhat similar lease, stated:

"By the agreement the exclusive right to take and appropriate all the minerals is conveyed, and during the term of the lease the lessor has no right to enter and operate for oil or gas. The title to the oil or gas except the one-eighth thereof is vested in the lessee, as is also the title to the gas and other minerals in the land. Under the rule of construction established, . . . the agreement creates a corporeal interest in the lessee, and is not merely a license to enter and operate for oil and gas." An agreement of the type involved in this case is not merely a lease of the land for the purpose of exploring, drilling and operating for oil and gas, but expressly and in apt terms is a defeasible grant of all the oil and gas in and under the described premises with the incidental right of egress and ingress for the purpose of drilling and operating oil and gas wells: *Sturdevant v. Thomson, Admr.,* 280 Pa. 233, 236; *McIntosh v. Ropp,* 233 Pa. 497; *Blakley v. Marshall,* 174 Pa. 425; *Hutton v. Carnegie Nat. Gas Co.,* 51 Pa. Superior Ct. 376, 381. "That there can be a severance of the minerals from the surface so as to create a separate estate in each, is too well settled to need the citation of authorities": *Hyde v. Rainey,* 233 Pa. 540, 544. The lease provides, "That the grantors . . . do hereby *grant* and *convey* all the oil in and under the following described tract of land." The parties here could not have manifested an intention to pass title to the oil and gas more clearly and unequivocally. Consequently the thought must be kept in mind that the question involved concerns the right of an owner of a tract of land, who has disposed of defeasible title to the oil and gas in and under the land, to declare a forfeiture of the title of the grantee of the oil and gas, a matter of far greater consequence than the forfeiture of a license to enter upon land and extract oil or minerals therefrom.

The general rule is that equity abhors a forfeiture. An agreement providing therefor must be strictly construed where a loss will be incurred which is contrary to equity. Conditions that favor forfeitures are not favor-

ites of the law, and nothing less than a clear expression that a provision shall be such, will make it a condition upon which the continuance of an estate granted depends: *Warfield v. Kelly,* 262 Pa. 482, 491; *Chauvenet v. Person,* 217 Pa. 464, 474; *Munroe v. Armstrong,* 96 Pa. 307; *Brown v. Vandergrift,* 80 Pa. 142. "The rule undoubtedly is that the right to declare a forfeiture must be distinctly reserved": *Thompson v. Christie,* 138 Pa. 230, 249. "Forfeitures, if no longer odious, . . . are yet not favored either at law or equity, and among the least favored have always been those founded on mere delay in the payment of money": *Westmoreland N. Gas Co. v. DeWitt,* 130 Pa. 235, 254. Applying these rules of construction we feel that the conclusion is inescapable that the provision in the lease providing that "this grant shall not be forfeited *for nonpayment of rental thereon,* unless the Grantee shall refuse or neglect to pay the same for ten days after having received written notice from the Grantors of intention to forfeit," does not apply to payments due on gas wells. The words "rental thereon" limit this provision to the acreage payments due under the terms of the lease, since they plainly refer to rental on the land. Only by implication is it possible to say that they include within their meaning gas-well payments. In addition, there is the highly significant fact that while the term "rental" is used in the lease in describing the acreage payments, it is not used in connection with the payments due on gas wells. This is a clear manifestation of intention by the parties to the agreement that only the payments expressly designated as rentals should fall within the forfeiture clause. The provision requiring ten days' notice before forfeiture can take effect cannot be construed as setting forth any new or independent grounds for forfeiture separate and distinct from those in the first provision. The reasonable interpretation of that clause is that it is merely a modification of the first in that it adds the notice requirement, but in no way does it extend the right of forfeiture

for grounds other than those set forth in the first provision.

Appellees contended that forfeiture is the means provided for enforcing payment of all moneys due under the lease, and that it was placed in the lease for that very purpose and to avoid the necessity of resorting to separate suits for defaults in the stipulated amounts due on each well just as for the acreage payments. That argument proceeds on the assumption that the extraordinary remedy of forfeiture is to apply to all and any payments due under this lease. With this assumption we cannot agree. Forfeiture as a method of compelling compliance must be limited to the grounds upon which the agreement states it may be invoked. This court will not read into the agreement a ground for forfeiture not expressly set forth by the parties.

The facts make it mandatory upon us to forestall the result, in no way justified by appellant's conduct, which would ensue upon the recognition of forfeiture. The two wells were drilled at a cost of approximately $13,-900. The amounts due under the lease had been paid for a period of 17 years on or about the respective due dates. As stated before, the amount in default at the time of the alleged forfeiture was only $187.50. On February 22, 1934, the appellant offered to make payment in full of the amount due, which offer was rejected by the appellees, who elected to stand on their declaration of forfeiture. Under the circumstances equity is best served by denying appellees the right to forfeit the lease. In *Myers v. Ohio-Penn Gas & Oil Co.*, 294 Pa. 212, 220, this court stated, "Forfeiture is not a favorite of the law, and to permit a declaration thereof for breach of covenant, the right thereto must be distinctly reserved, the proof of the happening of the event upon which it is to be exercised must be clear, the right must be exercised promptly, and in equity the forfeiture must not be unconscionable." This principle is too well established to require

additional citation. It applies with full force to the instant case, and fully justifies the conclusion reached.

The Gas Company comes into court asking for equitable relief and is bound by the familiar principle that he who seeks equity must do equity. It cannot embarrass the appellees by causing them to embark upon a course of needless litigation to secure the rental payments due them under the lease. It was admitted at argument that the appellees had notified the purchaser of the gas that they were the owners of the wells, and that no further payment should be made to the Gas Company on account of gas used or taken after January 23, 1934. The money withheld by the purchaser amounted to $3,377, while the amount owing the appellees at the time of the trial was $714.11, including interest. Consequently appellant will be in a position to make full payment of all moneys now due immediately upon the release of these funds.

We reverse the decree of the court below, reinstate the bill and direct an injunction to issue upon condition that appellant pay all rentals due and perform and continue to perform its covenants under the agreement; costs to be paid by appellant.