## Jennings, Appellant, v. Erie County League of Civic Organizations.

Argued November 14, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*David H. Lund,* for appellant.

*Gerald J. Weber,* with him *Thomas S. Mazanowski,* for appellee.

OPINION BY ERVIN, J., January 17, 1956:

Plaintiff sought to recover $1,250.00 for the construction of a reservoir to hold water on picnic grounds owned by defendant. After a verdict for the defendant the lower court refused plaintiff's motions for judgment n.o.v. and for a new trial and entered judgment upon the verdict. Plaintiff appealed.

The parties stipulated that the record shall consist of all relevant testimony as stated in the charge of President Judge ELMER L. EVANS to the jury and certain testimony of defendant's witness, Walter Brozewicz.

The testimony is summarized in the lower court's opinion as follows: "On the defendant's property, which had been purchased for use as a picnic grounds for many clubs, who made up the defendant organization, was great need for water. There was one water well which produced approximately a gallon of water per hour, and plans were made to drill additional wells. In September of 1950, the plaintiff appeared at a meeting when representatives of these various component organizations were discussing the matter and represented that he was willing to construct for them a reservoir with intersecting trenches and drains to gather and store water. He further represented that he had constructed similar reservoirs on his own and other property, at least one of them in the neighborhood, and

that this construction was cheaper and better as well as more effective than their intended plan to sink further wells. He further represented that he would guarantee that he would supply all of the water necessary for the use of the defendant and have it ready for use during the summer of 1951. He further represented that if he did not produce sufficient water he was to receive no pay. Having no knowledge as to this type of construction, the representatives relied upon his representations and guarantee of results. There was further testimony, which varied somewhat, that the amount of water represented to be produced and held in the reservoir would be 8000 gallons or more. The plaintiff in company with representatives of the defendant visited the grounds. He selected the location, and constructed a concrete block reservoir 12 feet by 18 feet by 17 feet and at the bottom made a bowl shaped excavation approximately five feet deep in the center. The location of the reservoir was in shale rock, which will hold water only in wet seasons. In the summer of 1951 a very small amount of water accumulated in the bowl shaped receptacle but was muddy and never sufficient or clean enough for use. Defendant's experts at the trial showed that in this area the water table is low, and that shale rock will not hold water at a point above the water level of the surrounding area. In other words, the construction could have been no more effective than a sieve. At certain times of the year when water was high, it would run in; when it was low, it would run out. At one picnic in early 1951 the defendants hired a fire department to haul 8000 gallons of fresh water from which they used sufficient for their purposes on the occasion, and the rest ran out. The plaintiff's testimony was to the effect that he only agreed to do the work they ordered and made no representations as to the satisfaction which would be ob-

tained by the suggested construction. In view of the jury's verdict, we must accept as true the defendant's version which was given in accordance with the above resume by several witnesses."

Appellant argues that there was no implied warranty to produce water and cites *Book v. New Castle Wire Nail Co.,* 151 Pa. 499, 25 A. 120, as authority for this principle of law. In the present case the defendant does not rely upon an implied warranty but rather an express warranty. Appellant also contends that the warranty must be specific as to quantity or quality. One of the defendant's witnesses testified that plaintiff "guaranteed that it would produce plenty of water for two thousand people or more, and that it would be water that could be inspected on any occasion and would be fit by State inspection for drinking purposes." Another witness testified that plaintiff was at the meeting in September, 1950 and represented that the place he would install for them would store 15,000 gallons of water anyway. Casimir Staszewski also testified substantially the same as above. The defendant's attorney offered two more witnesses to the same effect but they were not called because it was stipulated that their testimony would be similar to that produced by the prior testimony. There was also testimony that the plaintiff used the words "No water, no money." What was said by Judge CARDOZO in *Jacob & Youngs v. Kent,* 230 N.Y. 239, 129 N.E. 889, is particularly applicable here: "The courts never say that one who makes a contract fills the measure of his duty by less than full performance. They do say, however, that an omission, both trivial and innocent, will sometimes be atoned for by the allowance of the resulting damage, and will not always be the breach of a condition to be followed by a forfeiture . . . We must weigh the purpose to be served, the desire to be gratified, the excuse for devia-

tion from the letter, the cruelty of enforced adherence. Then only can we tell whether literal fulfillment is to be implied by law as a condition. This is not to say that the parties are not free by apt and certain words to effectuate a purpose that performance of every term shall be a condition of recovery. That question is not here. This is merely to say that the law will be slow to impute the purpose, in the silence of the parties, where the significance of the default is grievously out of proportion to the oppression of the forfeiture." In our opinion the language used was sufficient to describe the quantity of water to be produced with reasonable certainty.

*Filbert v. Philadelphia*, 181 Pa. 530, 37 A. 545; *Seiple v. Cosgrove*, 41 Lanc. Rev. 57; and *Belaune v. Gambino*, 161 So. 311, cited by appellant, differ from the case at bar in that the owners in those cases by contract specified in detail what was to be done and the manner of doing it. In the case at bar the site, the design and the method of performance were selected or furnished by the appellant. The appellant also complained of the lower court's charge to the jury that it had to find "no guarantees or assurances of water" before it could find for the plaintiff. We find no error in the court's charge when the entire charge in this connection is considered. It is as follows: "Now if you determine that the plaintiff, although he may have tried to sell his product to them, which is what any salesman will do, if he built it according to their instructions and their wishes and at the place they wanted it and made no guarantees or assurances of water, then he is entitled to either $1200.00 or $1250.00, depending on what you determine the oral contract to have been.

"If you believe that he insisted upon his process, of which he was an expert, being better than a well,

and that he was to locate it and that he represented that water from the springs would be secured and could be held and would be held in this tank or reservoir, for use in the amount in which they both stated this receptacle would hold, and if he said if he didn't accomplish that they wouldn't owe him anything, and if they entered into the contract with that understanding as part of it, then they are not responsible to him for any pay."

Appellant also argues that there was no breach of warranty which required him to forfeit the entire contract price. We agree with the lower court's disposition of this argument in the following language: "Restatement of Contracts, Section 274, page 399, cited with approval, Sgarlet vs. Griffith, 349 Pennsylvania 42, is to the effect that only material failure of performance by one party discharges the other. Section 275, pages 402-3, gives the rules for determining the materiality of a failure to perform. These things must be considered: '(a) the extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated; (b) the extent to which the injured party may be adequately compensated for damages for lack of complete performance; (c) the extent to which the party failing to perform has already partly performed or made preparation for performance; (d) the greater or less hardship on the party failing to perform in terminating the contract; (e) the wilful neglect or innocent behavior of the party failing to perform . . .'

"It is true that the plaintiff here suffers a complete loss for his material and labor if the verdict is sustained; and were it possible to compensate the defendant in damages for lack of complete performance, it would have been our duty at the time of trial to allow the contract price less what it would cost to complete

the work in a satisfactory manner. Here, however, construction was made where it is of absolutely no value for defendant's purpose, which the plaintiff well knew. It is merely a concrete construction in dry ground, and had the plaintiff made reasonable tests of the area as an expert, which he represented himself to be, he would have known what to expect. Under these circumstances, we are of the opinion the verdict must be sustained." ·

Judgment affirmed.