433 A.2d 888

**Herbert JACKSON, Appellant,**

v.

**RICHARDS 5 & 10 INC. t/a REO Discount Stores.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1979.

Filed July 31, 1981.

David A. Scholl, Philadelphia, for appellant.

Irwin Lee Gross, Philadelphia, for appellee.

Before CERCONE, President Judge, and WATKINS and LIPEZ, JJ.

CERCONE, President Judge:

This case comes before us from an order dated October 24, 1978, issued by the Court of Common Pleas of Philadelphia County dismissing the appellant's exceptions and motion for rehearing, and making final the decree nisi of December 20, 1976, from which the appellant now appeals.

On December 30, 1974 appellant, Jackson, entered into an oral agreement for the purchase of all the inventory, fixtures and good will of two stores, then owned by the appellee, Richard's 5 & 10, Inc., operating under the trade name of REO Discount Stores (hereinafter referred to as REO). One of the stores was on North 52nd Street and the other on Baltimore Avenue, both in Philadelphia. Until that time Jackson had been employed by the appellee as manager of the two stores. Beginning with the new year, 1975, Jackson took control of the two stores and operated them as if he were owner, although under the name of REO Discount Stores. In reliance on the oral agreement of sale of the business to him by REO, Jackson purchased the building in which the Baltimore Avenue store was housed. On January 30, 1975 both parties signed a written agreement, purportedly memorializing the previous oral agreement, and setting February 18, 1975 as the date for final settlement. The down payment, per the agreement, called for $5,000. Jackson provided appellee with a certified check for $2,000 and a personal check for $3,000. The latter was subsequently returned marked "non-sufficient funds." When the time for settlement came Jackson failed to appear, whereupon appellee "secured" the premises of both stores in an attempt to preclude Jackson from their further use, possession or control. The following day Jackson gained entrance to the businesses and resumed operations. On February 28, 1975 the parties signed another agreement concerning the purchase of the businesses. The date for final settlement was set as March 31, 1975. The down payment required was $2,000 in cash and a deed to Jackson's house executed by him in favor of the appellee, to be recorded only in the event of default. The agreement contained several other conditions,

of which three are here relevant.[1]  Two of the conditions, 6(b) and 8(c), required that Jackson perform certain obligations by March 3, 1975 and that he show evidence of performance to appellee's attorney.  Evidence of the performance of those two conditions was never furnished by Jackson.  Furthermore, the rent on the 52nd Street store was not paid for February or March; the chancellor found this to be a violation of the condition in paragraph 10(b).  Appellee requested that Jackson meet the conditions' requirements.  On March 21, 1975 appellee seized the two stores, removed all the merchandise from the Baltimore Avenue store and placed it in the 52nd Street store, and subsequently sold a large quantity of the merchandise (Easter Candy) without notice of the sale to Jackson.  The deed to Jackson's house, which he had executed in favor of the appellee, was recorded.  On March 25, 1975 appellant filed a complaint in equity and a petition for an injunction seeking to restrain the transfer or encumbrance of appellant's home.  A preliminary injunction was granted April 28, 1975, but was ordered dissolved by the decree nisi which followed a one-day trial September 14, 1976, which decree, in addition to dissolving the preliminary injunction denied Jackson the relief he sought, and awarded appellee $10,000 in damages.[2]  On

---

1.  The conditions in question read as follows:

"6(b) However, Buyer agrees to satisfy all obligations contained in Exhibit "C" of this Agreement by March 3, 1975, *and evidence said obligation* by bringing in bills marked satisfied by each of the said creditors to the office of Irwin Lee Gross, Esquire."

"8(c) Buyer agrees to produce for Seller on March 3, 1975, *a letter from a bank evidencing the fact* that he has filed for a Small Business Administration Loan and that all papers supplied by seller have been filed with said bank."

"10(b) Seller and Buyer shall continue to operate and conduct business to the date of closing in the normal and usual manner, complying with all laws and regulations of any Governmental Authority.  *Seller and Buyer further agree that prior to closing they will not do or perform any acts to cause a violation of the lease pertaining to the business premises* and will not increase the salary or commissions of any employee, agent or representative of the business." (Emphasis added.)

2.  Counsel for the appellant did not receive notice of the filing of the Adjudication and Decree Nisi until some time after the deadline for

February 10, 1978 appellant filed exceptions to the adjudication and a Petition for Rehearing. Argument was heard on the post-trial motions on October 12, 1978 and an order making final the Decree Nisi issued on October 24, 1978. This appeal followed.

We are asked to consider the appropriateness of the chancellor's holding that the appellant breached the contract of February 28, 1975 such that the appellee was warranted in recording the deed to appellant's house, which the appellee held as security in case of a default. Secondly, we are asked to consider the propriety of the chancellor's award of $10,000 in damages to the appellee, despite the fact that the appellee had failed to plead a "counterclaim," or later, to move to amend the pleadings. We consider these questions in reverse order.

Rule 1510 of the Pennsylvania Rules of Civil Procedure provide that a defendant may plead a counterclaim to an action in equity if the cause of action "arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose." Pa.R.Civ.P. 1510(a). Failure to plead a set-off or counterclaim is not fatal to the claim since such counterclaims are not mandatory but only permissible. This is true even where, as here, the issues raised by a defendant's pleadings include all the elements of the counterclaim. Furthermore, Pa.R.Civ.P. 1033 allows for amendments of pleadings at any stage of the trial litigation, either upon consent of the adverse party or by leave of the trial court.[3] Of course, leave to amend is not automatically granted by the trial court; it must first be requested, and then the request may be accepted or denied at the discretion of the court. *Sheppard v. First Penna. Banking & Trust Co.*, 199 Pa.Super. 190, 184 A.2d 309 (1962); 5A Anderson Pa. Civ. Pract. 404. In

post-trial motions had passed. Upon petitioning the court appellant was given leave to file exceptions and post-trial motions.

3. Pa.R.Civ.P. 1033 reads: "A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading."

the instant case, appellee never pleaded a counterclaim, neither did it obtain the consent of the appellant nor the leave of the chancellor to amend its pleadings. See *Garber Oil Co. v. Mitzel*, 60 Lanc.L. 467 (1967); *B. F. Goodrich Rubber Co. v. Shaffer*, 36 Dauph. Co. Rpts. 322 (1933).[4] Appellee's contention that the appellant was obliged to object preliminarily to its answer and new matter on grounds of insufficiency of the counterclaim begs the question. Preliminary objections are certainly appropriate where a pleading is ambiguous or incoherent or fails to state adequately an element of a cause of action, but it would be ludicrous in the extreme to require preliminary objections asserting insufficiency of a pleading where the pleading was never made. For failure to plead a counterclaim, and for failure later to amend the pleadings in accordance with Pa.R.Civ.P. 1033, the award of damages to the appellee necessarily fails, and must be reversed.

Appellant next assigns as error the chancellor's ruling that he had materially breached the contract of February 28, 1975, and that because of the breach the forfeiture was appropriate. We do not agree with the learned chancellor and therefore reverse his decision and remand the case with instructions that the preliminary injunction be reinstated, and that a hearing be held for a determination of damages, if any, due the appellant.

█ The chancellor found that Jackson breached the agreement of February 28, 1975 in three particulars and that these breaches were material. The chancellor found that Jackson failed to provide *evidence* to the appellee's attorney that a loan application for a SBA loan had been made, and that certain debts had been paid off. He also failed to pay rent for the months of February and March on the 52nd

4. Although the amendment of pleadings is liberally allowed, not all of the formal requirements have been done away with. Formal motions requesting leave of the court are still required. No motion, formal or informal, was made by appellee's counsel, nor did it rise to address the issue when appellant's counsel objected to the admission of evidence relevant to the appellee's alleged damages as not in conformity with the pleadings.

Street store. On review, we are bound by the chancellor's findings of fact if approved by the court en banc; [5] we are not so bound as to conclusions of law.

■ We begin by noting that forfeitures meet with great disfavor both at law and in equity. As the court said in *Penn-Ohio Gas Co. v. Franks' Heirs*, 322 Pa. 233, 185 A. 280 (1936), "[t]he general rule is that equity abhors a forfeiture. An agreement providing therefore must be strictly construed where a loss will be incurred which is contrary to equity." *Id.*, 322 Pa. at 237, 185 A. at 282. Furthermore, "[a]lthough a forfeiture may be sustained in equity in some circumstances, equity should scrutinize the transaction to assure that all of the rights of the party from whom forfeiture is sought have been protected. [Citations omitted.]" *Barraclough v. Atlantic Refining Co.*, 230 Pa.Super. 276, 281, 326 A.2d 477, 479 (1974). The contract provided for the forfeiture of the appellant's house in the event of a default. This provision was not one of the liquidated damages, where no other damages could be claimed; it was, rather, the right of the appellee to record the deed appellant gave it in the event of breach, as well as to assert damages which might arise as a result of the same breach. The harshness of the provision requires that we construe the contract strictly in order to prevent inequity.

Jackson asserts that the contract breaches in all three instances are immaterial and therefore should not be construed as sufficient to support a forfeiture. Jackson further argues that he substantially performed his duties under the contract. We need not consider the substantial performance question since we find as a matter of law that any inadequacy in Jackson's performance was not so material as to permit the forfeiture, since under the circumstances to permit a forfeiture would be unjust.

5. Rule 1519 of the Rules of Civil Procedure requires that exceptions to decrees nisi must be heard by the court en banc. Rule 7 of the Special Rules for Philadelphia provides that the trial judge may act as the court en banc unless he or the president judge orders otherwise.

■ The chancellor found that Jackson never provided appellee's attorney with evidence that certain bills had been paid as required by paragraph 6(b) of the contract.[6] Appellant did not and does not contest this fact. At trial he attempted rather to show a good faith effort to pay off the bills as required by the contract. The chancellor also found that appellant failed to meet the requirement of paragraph 8(c) of the contract which required appellant to furnish evidence that he had filed an application for a SBA loan. Appellant has not argued that he met the terms of this condition, but contends that in fact he did file an application, and that his dealings with First Pennsylvania Bank were known to appellee. The record amply supports this contention, and it not contradicted in the chancellor's finding of facts. Finally the chancellor found that rent for the building on 52nd Street, which was not owned by Jackson as was the Baltimore Avenue store, was not paid for February

6. Paragraph 6(b) required payment of the "Schedule C" bills and that appellee be provided with evidence of payment." Schedule C included the following figures:

| | |
|---|---:|
| Missing petty cash | $ 200.00 |
| Electric (52nd Street Store) | 143.45 |
| (Baltimore Avenue Store) | 184.47 |
| Telephone (52nd Street Store) | 24.84 |
| (Baltimore Avenue Store) | 26.89 |
| Gas (52nd Street Store) | 192.45 |
| (Baltimore Avenue Store) | 237.58 |
| Blue Cross for Jackson | 28.80 |
| Insurance for Jackson | 13.44 |
| Posner Products | 130.70 |
| Lawndale Products | 83.00 |
| Fesco Plastics | 564.69 |
| Nabisco | 309.39 |
| | $ 2,139.70 |

Of the total $2,139.70, $42.24 was solely for Jackson's personal benefit, being his Blue Cross/Blue Shield and insurance coverage. This reduces the total amount on which REO would be liable to persons other than appellant to $2,097.46.

By the date of the March 21 seizure of the two stores Jackson had paid off $778.39, thus reducing the outstanding bills to $1,319.07.

The seizure of the two stores on February 18 resulted in the confiscation of $406.00 in cash register receipts by REO. The $200.00 deficit from petty cash is by far offset by this $406.00 taken during the seizure. This reduces the outstanding amount to $1,113.07, or less than half the total bills on Schedule C.

or March.  This is said to have been a violation of paragraph 10(b) of the contract.  After reviewing the record we can say without hesitation that the rent was not paid.  We are more reticent to say that this nonpayment of rent violated the contract's paragraph 10(b).  That paragraph of the contract states initially that the business operations were to continue in their usual manner until the closing.  Under the terms of the oral agreement appellant took possession and control of two stores January 1, 1975.  He was to operate them as if he were the owner, receiving all the profits and being responsible for all obligations incurred by the business.[7]  Furthermore, it would appear that it was REO's usual practice to withhold rent on the 52nd Street store because of a dispute with the landlord concerning the lack of heat in the building, and because of the added cost to REO of warming the store with electric space heaters.  We hold, therefore, that the lower court erred in finding that appellant breached paragraph 10(b) of the contract.

We acknowledge the correctness of the chancellor's finding of fact that Jackson was in breach of the conditions set out in paragraphs 6(b) and 8(c).  We must now determine if those breaches were material to the contract, and if they are substantial enough to support the forfeiture of appellant's home.[8]  In light of the appellant's breach of the previous contract on February 18, 1975, the conditions of the second written agreement would seem to be somewhat analogous to the right to adequate assurances of performance under

7. Appellee mailed a letter to the businesses with which it regularly dealt announcing the change in ownership of the two stores, and naming Jackson as the new owner.

8. We note that the two conditions which appellant breached appear to be largely evidentiary in nature, and as such would almost ipso facto preclude a finding that their breach constituted a material breach of the contract such that a forfeiture like the instant one could be sustained. *Cf.* 17A C.J.S. Contracts § 578: "Where a clause is inserted in a contract for the purposes of furnishing evidence of performance other than as a condition precedent to liability, the acts indicated by such clause need not be performed by the promisor in order to enforce the promisee's obligation. . . ."  And see *Howe v. Motion Picture Advertising Service*, 150 Miss. 383, 116 So. 598 (1928).

§ 2609 of the Uniform Commercial Code. 13 Pa. C.S. § 2609.[9] Under the UCC, the party of whom adequate assurance has been requested has a "reasonable time" to provide the same or risk repudiation of the contract. Appellant argues now that the three days between the date of the contract's signature and the conditions' performance date was not a reasonable time under the circumstances of this case, where two of the days were Saturday and Sunday. We need not discuss this issue since in any event appellant has not preserved the issue for our review.[10] However, even assuming, as we must, that three days was a reasonable time in which to meet the conditions, we are not persuaded that under the facts of this case the breaches of those conditions was so significant that the forfeiture could be upheld.

We are reminded of the case of *Jennings v. League of Civic Organizations of Erie County*, 180 Pa.Super. 398, 119 A.2d 608 (1956). That case also involved a forfeiture. We quoted in *Jennings* an opinion written by Justice Cardozo during his days on the New York court, where he said:

9. UCC § 2609 reads:
   Right to adequate assurance of performance.
   (a) General rule—A contract for sale imposes an obligation on each party that the expectation of the other of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he received such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.
   (b) Reasonableness and adequacy between merchants.—Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.
   (c) Effect of acceptance of improper delivery or payment.—Acceptance of any improper delivery or payment does not prejudice the right of the aggrieved party to demand adequate assurance of future performance.
   (d) Effect of failure to provide assurance.—After receipt of a justified demand failure to provide within a reasonable time not exceeding 30 days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

10. Furthermore, in fact appellant had until the date of the repossession—March 21—to cure the "anticipatory repudiation."

"The courts never say that one who makes a contract fills the measure of his duty by less than full performance. They do say, however, that an omission, both trivial and innocent, will sometimes be atoned for by allowance of the resulting damage and will not always be the breach of a condition to be followed by a forfeiture. * * * We must weigh the purpose to be served, the desire to be gratified, the excuse for deviation from the letter, the cruelty of forced adherence. Then only can we tell whether literal fulfillment is to be implied by law as a condition . . . ."

*Id.*, 180 Pa.Super. at 401–402, 119 A.2d at 610, quoting from *Jacob & Youngs v. Kent*, 230 N.Y. 239, 129 N.E. 889 (1921). The *Jacob & Youngs* case involved constructive conditions precedent and not the express conditions which we face. In discussing the Cardozo opinion and its relationship to express conditions, Dean Murray says:

In *Jacob & Youngs*, Cardozo took pains to distinguish the situation involving constructive conditions from one involving express conditions: "This is not to say that the parties are not free by apt and certain words to effectuate a purpose that performance of every term shall be a condition of recovery. That question is not here." There is little doubt that Cardozo meant to suggest that the "doctrine" of substantial performance does not apply to express conditions, i. e., conditions agreed to by the parties as contrasted with those inserted by the court. This indicates that parties may include an express condition to the duty of either party and the nonoccurrence of that condition would result in the failure to activate the duty to which it is attached thereby ultimately discharging that duty, notwithstanding possible forfeiture to the obligee. The New Restatement of Contracts recognizes the fact that the doctrine of substantial performance does not apply to express conditions. However, it suggests that relief may be had through a section dealing with excuse of condition to avoid extreme forfeiture, unless the occurrence of the condition was a material part of the agreed exchange.

[Section 262 of the proposed Restatement (Second) of the Contracts reads:

## § 262. WHEN PERFORMANCE IS A CONDITION.

Except as stated in § 265, it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.

Comment d to the same section reads:

If, however, the parties have made an event a condition of their agreement, there is no mitigating standard of materiality or substantially applicable to the non-occurrence of that event. If, therefore, the agreement makes full performance a condition, substantial performance is not sufficient and if relief is to be had under the contract, it must be through excuse of the non-occurrence of the condition to avoid forfeiture. . ."

Restatement (Second) Contracts § 262, Comment d (Tent. Draft No. 8, 1973).]

Illustration 1 to that section is based on facts similar to *Jacob & Youngs* except that the specification is stated as an express condition and the unpaid balance is greater. The illustration indicates that the court may excuse even this express condition if it determines that the nonoccurrence of the condition was so relatively unimportant to the owner that the resulting forfeiture to the builder would be extreme. Since the amount of the unpaid balance in the illustration is almost triple the amount in the actual case, the Restatement (Second) drafters apparently felt compelled to ascertain that the forfeiture would be "extreme." The other requirement of this new section is a finding by the court that the nonoccurrence of the express condition is "relatively unimportant" to the owner which raises problems of a subjective materiality standard discussed in an earlier section." The new Restatement analysis is a manifestation of the strong abhorrence of forfeitures and suggests a desirable result. However, the difficulties in

determining whether the nonoccurrence of the condition is "relatively unimportant" to the obligor and whether the forfeiture is "extreme" should not be underestimated. Murray on Contracts, § 168 (1974) [Footnotes omitted]. In a similar vein, Corbin has the following to say:

When it is said that courts do not favor forfeitures, the meaning is that they do not like to see a party to a contract getting something for nothing. It is for the same reason that they refuse to enforce an express provision for the payment of a penalty. Therefore, the courts do not greatly favor express conditions precedent where the condition is itself no part of the subject-matter of exchange by the parties and where giving effect to the condition will result in one of the parties enjoying benefits under the contract without giving the agreed equivalent in exchange therefor. . . .

3A Corbin on Contracts § 748 (19  ). *And see Murray, supra* § 234.

■ In light of the foregoing, we find that the express conditions of the contract's paragraphs 6(b) and 8(c) bear no substantial relationship to the subject matter of the proposed exchange, i. e., the sale of two businesses. The thrust and primary purpose of the parties' agreement was not that Jackson pay off certain minor accounts owing or provide evidence of having done so, in return for which the stores would be transferred to him. Rather, the agreement was that for the sum of $60,000 appellee would transfer the business to Jackson. However, the agreement also provided that before appellee's duty to exchange the two stores in return for $60,000 would arise Jackson would have to fulfill certain express conditions precedent, *viz.* the payment of the outstanding bills, providing of evidence of the filing of the loan application. Jackson's failure to comply with these conditions releases REO from any duty which might have arisen to transfer ownership of the two stores and their merchandise to him. However, the breach of those conditions does not give REO the right to exercise the forfeiture clause. To hold otherwise would be to permit a clear injus-

tice and this we will not do. This is so because the breach of the conditions precedent 6(b) and 8(c) appears trivial in comparison with the subject matter of the contract proper. There was a good faith effort to comply with their more substantive terms, even after the specified time for the performance of those conditions precedent had passed. In view of the purposes of the conditions, the subject matter of the contract and the conduct of the parties in general it would be inequitable to permit this forfeiture.[11]

Because we have held the forfeiture to be unjust if based solely on the breach of the conditions precedent not material to the subject matter of the contract proper, we impose a constructive trust on the deed from Jackson to REO and remand the case to the lower court to allow it the opportunity to determine the proper remedy and to enter an order to effectuate the same. We are particularly troubled by the possibility raised in the record that REO owed Jackson $30,000 in back wages, but the record in its present state is inadequate for a determination of the question. We are also troubled by the fact that REO may well have suffered damages as a result of Jackson's handling of the business after January 1, 1976. The lower court determined that there were in fact such damages, but we have held this to have been improper because the counterclaim was not properly pleaded. Therefore, the lower court, in exercise of its discretion, may fashion an appropriate remedy, and may allow REO to amend its original pleadings to include a counterclaim against which Jackson will be afforded the

11. Although we recognize the following to be obiter dictum literally marginal to our holding, we should like to note our displeasure with the appellee's method of repossessing the merchandise of the two stores. Ordinarily repossession is only proper if it can be accomplished without breach of the peace. The instant record is somewhat muddled on the point, but it would appear that appellee enlisted the aid of the Philadelphia police to effectuate the repossession. There is a line of authority that says that use of law enforcement agents in repossessions itself creates a constructive breach of the peace. See *Walker v. Walthall*, 121 Ariz. 121, 588 P.2d 863 (1978); *Stone Machinery Co. v. Kessler*, 1 Wash.App. 750, 463 P.2d 651 (1970); Note, Breach of Peace and Section 9–503 of the Uniform Commercial Code—A Modern Definition for an Ancient Restriction, 82 Dick.L. Rev. 351 (1978).

proper opportunity to defend his interests. If the lower court finds that REO is entitled to damages, then the constructive trust placed on the deed will fall by the wayside, since it will then serve the function for which it was originally intended—that of security.

The case is remanded for proceedings in the court below not inconsistent with this opinion.