## Shoemaker v. Lehigh Valley Coal Co.

*Mitchell Jenkins* and *Charles H. Minor, Jr.*, for plaintiff.

*James P. Harris*, for defendant.

PINOLA, J., July 22, 1958.—The problem posed in the case stated is one of interpretation of the language of a coal lease and certain letters.

The pertinent facts are as follows:

1. On October 25, 1882, Robert McD. Shoemaker entered into a coal lease with John Henry Swoyer, leasing to him all the coal underlying that part of Kingston Township, Luzerne County, which is now embraced by the Boroughs of Forty Fort and Swoyerville.

2. By various assignments, the lessee's interest became vested in the Lehigh Valley Coal Company.

3. The lessor, who died on November 23, 1886, devised all the royalties payable under the lease to his son, Robert Shoemaker. Upon the death of Robert Shoemaker, the administrator of his estate and subsequently the Second National Bank of Wilkes-Barre, as administrator d.b.n., collected the royalties payable under the lease. Upon resignation of the bank as administrator, plaintiff, Robert M. Shoemaker, was appointed administrator d.b.n., and the lessor's interest in the coal lease was assigned to him.

4. In the granting clause, the lessor did "demise, lease and to mine let" all the anthracite coal upon, in and under the described lands, with the right to use certain surface in connection with the mining operations. The habendum clause reads as follows:

"TO HAVE AND TO HOLD the said anthracite Coal and surface hereby demised and the mining rights and privileges aforesaid with the appurtenances unto the said John Henry Swoyer, his heirs, executors, administrators and assigns, until all the merchantable and workable Coal accessible by prudent, careful and skillful working upon, in and under the land above described shall have been mined out and exhausted, excepting the Coal left for pillars and subject to the covenants and conditions herein contained."

5. The lessee agreed to pay a royalty of $.25 per ton, with an annual minimum of $8,000.

6. Paragraph 3 of the lease reads as follows:

"3rd. That all the mining operations shall be conducted with prudence, skill and care so that coal shall not be wasted or lost and that so nearly as is possible all the coal in, upon and under the land above described shall be mined out except the coal that may be left for pillars. And it is hereby understood that said Lessee shall not rob the mines of the pillars unless with the written consent of the lessor, his heirs or assigns."

7. Under paragraph 11, the lessee or his successor could "at any time during the said term forfeit and abandon" the lease upon payment of the sum of $13,000 in addition to all sums therefore paid and of all rents and royalities then accrued, provided six months' notice of intention to abandon be given.

8. By letter dated November 16, 1932, defendant requested permission to do pillar mining.

9. By letter dated March 15, 1933, the Second National Bank of Wilkes-Barre, as administrator d.b.n., granted the requested permission to do pillar mining.

10. Defendant, in pursuance of the permission granted, undertook pillar mining in connection with first mining.

11. By letter dated February 25, 1954, defendant

notified the bank that it would surrender the demised premises on August 31, 1954.

12. The bank, by letter dated August 13, 1954, made a demand upon defendant for the sum of $13,000 claimed to be due under the terms of paragraph 11 of the lease.

13. When the demised premises were surrendered, there remained approximately 43,091 tons of mineable pillar coal in the premises.

14. At the time of the abandonment of the lease there were no improvements on the premises of a kind specified in paragraph 11 of the lease.

15. From October 25, 1882, to September 1, 1954, defendant mined 2,208,975.15 gross tons of coal, pea and larger, from the demised premises, having a royalty value, at the rate set out in said lease, of $510,-129.40; in addition, defendant sold 27,186.08 gross tons of culm produced from the demised premises, having a royalty value of $7,057.60; defendant has paid to lessors a total of $606,918.22 by way of royalty and minimum royalty; and at the date of surrender of the demised premises, defendant had paid to lessors $89,731.22 in excess of royalty on all coal mined from said premises by defendant.

16. After the date of surrender of the lease plaintiff entered into a lease with other lessees for the mining of the pillar coal remaining unmined at royalties in excess of those paid by defendant. Said lessees, as of July 1, 1956, mined approximately 32,120 gross tons and the remaining mineable coal amounted to approximately 10,971 gross tons. Upon the mining of said 10,971 tons, all the mineable coal was or will have been mined.

17. The royalty provided for in the lease on the mineable coal remaining after surrender of said lease, to wit, 43,091 gross tons, on the basis of all of said coal being above pea size, would have been $10,772.77, so

that defendant has paid to plaintiff $78,958.45 more than the royalty on all the mineable coal in said demised premises, including all coal mined by defendant, all coal mined by the subsequent lessees and all coal unmined.

### Respective Contentions

Plaintiff contends that paragraph 11 of the lease is applicable even though only pillar coal remains, and, therefore, the $13,000 payment is due.

Defendant, on the other hand, insists that the mining of pillar coal was a special privilege not subject to the provisions of paragraph 11.

### Discussion

Before entering upon a discussion of the problem, it is well to note the exact language of the parties in connection with the grant of the privilege to remove pillar coal.

In its request dated November 16, 1932, defendant referred to paragraph 3 of the lease and then called to the attention of the bank the fact that the operations had reached a point where it became necessary to rob the pillars, otherwise they would be lost for all time to both the lessor and the lessee. The company declared:

"As it is to our mutual advantage that the said pillars be mined out, in compliance with the above quoted clause, we hereby request the written consent of the Lessor to rob the mines of the pillars.

"We urge a prompt reply to this request as it is impossible to hold up indefinitely the proposed robbing operations, so that unless the requested written consent is promptly given, the said pillars will become inaccessible, and, as stated above, will be lost for all time to both the Lessor and Lessee."

Following the receipt of this letter, a meeting of the interested parties was held at the bank on February 24, 1933, and according to the memorandum:

"It was decided to grant the Lehigh Valley Coal Company permission to mine the pillar coal *under the terms and provisions of the lease* . . . dated October 25, 1882, . . .

"The granting of such permission in no way changes the other terms and stipulations of the lease and in no way releases or relieves the Lehigh Valley Coal Company from such claims as the lessors have for the non-payment of pea coal and prior robbing of pillars or any other claims that the lessors may have as of this date against the Lehigh Valley Coal Company or their assigns."

In pursuance of this agreement, the board of directors of the bank, on February 28, 1933, adopted the following resolution:

"RESOLVED, that the proper officers of the Trust Department be and are hereby authorized to grant the Lehigh Valley Coal Company the privilege and right to mine pillar coal *under the lease* between Robert McD. Shoemaker and John Henry Swoyer, dated October 25, 1882, now held by the Lehigh Valley Coal Company. The granting of such permission to, in no way, alter or change any of the other provisions in said lease nor to waive or release the Coal Company from any claims that the lessors may have as of this date, and, this permission is granted pursuant to the recommendations and consent of William P. Shoemaker, Mary B. Kilpatrick and Robert M. Shoemaker (for the Estate of Alexander M. Shoemaker), the heirs of Robert Shoemaker, deceased, as set forth in the conference held February 24th, 1933 at The Second National Bank of Wilkes-Barre."

On March 15, 1933, the bank wrote to defendant enclosing a certified copy of the resolution adopted by the board and declared:

". . . this will convey the authorization of The Second National Bank of Wilkes-Barre, Administrator d.b.n. of the Estate of Robert McD. Shoemaker and

John Henry Swoyer, dated October 25, 1882, as is required in the third article of said lease.

"This authorization in no way changes or alters the present conditions of the lease, except as to pillar coal, and in no was releases and relieves The Lehigh Valley Coal Company from such claims as the lessors may have as of this date."

A lease of coal in place until all the merchantable and workable coal shall have been mined out and exhausted constitutes a sale of an estate in fee simple. The lessor does not retain any estate in the coal but does retain his estate in the surface and his right to surfact support. The lessor's interest in the coal lease is a possibility of reverter: Smith v. Glen Alden Coal Co., 347 Pa. 290.

Therefore, considered alone, the granting clause of the lease passes a fee to *all* the coal. And while the habendum clause apparently contains an exception, to wit, the coal left for pillars, we believe it is not so clearly expressed as to reduce, diminish or limit the estate granted by the granting clause. The reference to the coal left for pillars in the habendum clause must be read in conjunction with the third paragraph of the lease which required the consent of the lessor in writing be obtained before the lessee could rob the mine of the pillars. Thus viewed, we have a situation similar to that In re Kingston National Bank Assessment, 43 Luz. 245. There we held that title to all the coal passed to the lessee and that only the right of removal was limited. Such seems to be the case here. This lessor did not surrender or waive his right to surface and lateral support and the leaving of pillars was intended to protect the mine and provide the support necessary until such time as the lessor was prepared to forego its protection.

While title to all the coal passed to the lessee, not to be divested except upon condition subsequent, we

believe the penal provisions of paragraph 11 become operative only if there is a forfeiture or abandonment during the term, which, as stated in the habendum clause, is to continue "until all the merchantable and workable Coal accessible by prudent, careful and skillful working upon, in and under the land above described shall have been mined out and exhausted, excepting the Coal left for pillars. . . ."

Clearly, if the lessor chose not to grant permission to rob the pillars, the term would have ended upon exhaustion of all other coal, and the lessee would have been able to surrender the premises without the $13,000 payment.

Moreover, there is no compulsion under the terms of the lease to rob pillars. On the contrary, there is a restriction against it. The lessee need never have sought permission to mine pillar coal and could have fully performed without doing so and without penalty. Such being the case, does the fact the permission was sought and obtained to rob pillars extend the term until such time as all mineable *pillar* coal was mined out and exhausted? We think not. While permission was granted to mine pillar coal, the quantity of pillar coal to be mined was not specified and the extent of the pillar mining to be done was left in the discretion of the lessee. In fact, the lessee was under no obligation to do any pillar mining whatsoever.

There is nothing in the lease which declares that if and when pillar coal is mined, it must be mined under the terms and provisions of the lease itself. The owners did decide at their conference to permit the mining of the "pillar coal under the terms and provisions of the lease . . . dated October 25, 1882." But the resolution adopted by the board of director of the bank contains no such language. It authorizes the officers "to grant the Lehigh Valley Coal Company the privilege and right to mine pillar coal *under the lease* be-

tween Robert McD. Ssoemaker and John Henry Swoyer." This might be construed to mean "under the terms and provisions of the lease." or it might well refer simply to the pillar coal which is available and to which reference is made in the lease dated October 25, 1882.

It does not appear that the agreement of the owners was ever brought to the attention of defendant, and, therefore, defendant is not affected by it.

The uncertainty of the language of the lease and the letter of authority requires that we adopt a construction most favorable to the lessee: Larsh v. Frank & Seder of Pittsburgh, Inc., 347 Pa. 387. We, therefore, hold that the privilege of pillar mining was not subject to the provisions of paragraph 11 of the lease.

There is no merit to the argument of counsel for plaintiff that defendant impliedly admits operating under the lease because it gave a six months' notice of its intention to abandon. The giving of this notice is equally consistent with operation outside the scope of the lease. To abandon under paragraph 11, two things were required, the notice of intent to abandon and the payment of $13,000. Defendant did not offer to make that payment and in these proceedings resists that very payment.

Furthermore, it appears that the lessors have paid $78,958.45 in excess of the amount due as royalties for every pound of mineable coal, including pillars, in or upon the demised premises.

While the agreement as to the facts does not disclose the royalties realized from the subsequent lessees on the 32,120 tons of pillar coal mined, from our experience, we can be sure that they were not at the rate of $.25 per ton. It is common knowledge that the lowest rate in the valley today is $.50 per ton and in many instances lessees are paying as high as $1 per ton.

Under these circumstances, to adopt a construction which would require defendant to pay the additional

sum of $13,000 would be most unfair: Lehigh Valley Coal Company v. Coxe Brothers & Company, Inc., 327 Pa. 23.

We believe the $13,000 penalty was intended to protect against an abortive withdrawal by a lessee before the lessor was able to realize through royalty full payment for his property. In view of the excess of payment, it cannot be denied his end was achieved, and, therefore, he is entitled to no more.

Accordingly, we enter the following

*Order*

Now, July 22, 1958, at 12 noon, judgment is entered for defendant, the Lehigh Valley Coal Company.