Raymond **WESLEY**

v.

**MOBIL OIL CORPORATION.**

**Civ. A. No. 81–1152.**

United States District Court, E. D. Pennsylvania.

April 21, 1981.

Robert P. Weiner, Zarwin, Baum, Arangio & Ross, Philadelphia, Pa., for plaintiff.

Jon A. Baughman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

1. According to the complaint, this lease consists of a Service Station Lease, a Retail Dealer

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

This matter is now before me on plaintiff's motion for a preliminary injunction under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 et seq., and defendant's motion for summary judgment. For the reasons set forth in this memorandum, I will grant plaintiff's motion and deny defendant's motion.

Plaintiff Raymond Wesley operates a Mobil service station in Trooper, Pennsylvania, as a franchisee of defendant Mobil Oil Corporation ("Mobil"). In 1977, plaintiff and defendant entered into a three year agreement for the period from April 1, 1978 to March 31, 1981, which included a lease of the service station premises at Trooper and Audubon Roads and a contract for the regular supply and purchase of Mobil products.[1] In a letter dated September 30, 1980, a district sales manager for Mobil informed Mr. Wesley that the company would not renew the present contract and lease which would expire on March 31, 1981, but at a later time it would submit its proposed new agreements to Mr. Wesley for his consideration. Defendant never sent the proposed agreements to plaintiff; instead, in a letter dated December 11, 1980, Mobil told Mr. Wesley that because he had closed his station for a period of more than seven days in violation of paragraph 8 of the lease agreement, the company would not renew his franchise. Noting that the PMPA recognizes a failure to operate a station for more than seven consecutive days as grounds for both termination and non-renewal of a franchise relationship, Mobil also stated that the letter represented the ninety day written notice required by the Act.

As a result of Mobil's decision not to renew its franchise with Mr. Wesley, he instituted this lawsuit, seeking inter alia a preliminary injunction pursuant to Section 105(b)(2) of the PMPA. The complaint alleges that Mobil did not have grounds to

Contract and allied marketing documents.

refuse to renew its agreement with Mr. Wesley, that a preliminary injunction would impose less of a hardship on Mobil than the failure to grant such relief would have on the plaintiff and that there exists serious questions going to the merits of plaintiff's contention that nonrenewal was unjustified.

In its memorandum in opposition to the motion for a preliminary injunction and in support of its own motion, Mobil argues that it is entitled to summary judgment as it had grounds to refuse to renew its franchise agreement with Mr. Wesley. Defendant states that nonrenewal was based on Mr. Wesley's closing of his station for eleven days from November 27, 1980 through December 7, 1980. In addition to the fact that the closing was prohibited by paragraph 8 of the lease agreement,[2] defendant argues that a provision of PMPA, 15 U.S.C. 2802(c)(9), sanctions termination or nonrenewal of a franchise agreement by the franchisor if the franchisee fails to operate the "marketing premises" for seven consecutive days.[3]

While plaintiff concedes that he did close his station for eleven days, he denies that this closing provided a legitimate ground under the PMPA for nonrenewal of the franchise relationship. Mr. Wesley's argument on this issue is two-pronged. First, he claims that conduct by representatives of Mobil lulled him into believing that the company had no objection to his closing of the station. Second, plaintiff contends that defendant has misinterpreted the meaning of "seven consecutive days" as it appears in Section 102(c)(9)(A) of the PMPA. It is plaintiff's view that this language means seven business days rather than seven calendar days. Under this theory, Mobil could not rely on § 102(c)(9)(A) as a basis for nonrenewal because excluding the Thanks-

giving holiday and the weekends in question, Mr. Wesley's station was not closed for more than seven consecutive business days. After reflection, I am convinced that at least the first part of plaintiff's argument has merit. At this time, prior to an opportunity for full discovery, plaintiff has offered some evidence to support the claim.

The testimony of representatives of Mobil as well as that of Mr. Wesley given during the hearing on this matter lends support to plaintiff's claim that Mobil's conduct led him to believe that the company had acquiesced in, if not approved, his closing of his station from November 27, 1980 through December 7, 1980. It is undisputed that prior to the closing, Mr. Wesley put a sign in the window of the station office which read "Closed for vacation—November 27 through December 7." (Notes of Testimony, 4/3/81, at 68). There is dispute, however, on other facts concerning Mobil's prior notice of Mr. Wesley's proposed vacation and its conduct as a result of such notice.

Mr. Wesley testified that he first posted the sign about his vacation on Election Day, November 4, 1980. (N.T. at 69). Plaintiff further stated that on or about November 12, 1980, he told John Woolfolk, a Mobil marketing representative who is in charge of the area in which Mr. Wesley's station is located, that he would be closing the station for the period following Thanksgiving. (N.T. at 43). According to plaintiff, Mr. Woolfolk responded to this information with the remark, "Do what you want. What can I say?" (N.T. at 44). Mr. Wesley also testified that on November 26, 1980, the day before the closing, Mr. Woolfolk, who was at the station, said to Mr. Wesley in parting, "Have a good vacation." (N.T. at 69–70). While plaintiff has admitted

**2.** Paragraph 8 provides in relevant part:
 . . . if the premises are closed for the operation of a service station for 60 or more consecutive hours . . . Landlord may . . . terminate this lease on notice to Tenant.

**3.** 15 U.S.C. § 2802(c)(9) states:
 (c) As used in subsection (b)(2)(C) of this section, the term "an event which is relevant to the franchise relationship and as a result

of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as—
 (9) failure by the franchisee to operate the marketing premises for—
 (A) 7 consecutive days, or
 (B) such lesser period which under the facts and circumstances constitutes an unreasonable period of time . . .

230

that he knew his lease prohibited any closing of the station for more than sixty consecutive hours (N.T. at 43), he argues that the conduct of Mobil representatives, particularly the conduct of Mr. Woolfolk, described above, lulled him into believing that Mobil was not against the closing and therefore would not enforce the sixty hour lease provision.

Mr. Woolfolk's version of events differs in some respects from that of plaintiff but is not completely contradictory. Mr. Woolfolk testified that although he had visited Mr. Wesley's station several times in the first weeks of November, 1980, (N.T. at 107), he did not see the sign until November 24. (N.T. at 90). Mr. Woolfolk denied that he ever discussed Mr. Wesley's proposed vacation with him prior to the closing of the station (N.T. at 91); however, he stated that he could not recall whether or not he told Mr. Wesley to have a nice vacation. (N.T. at 108).

During his testimony, Mr. Woolfolk revealed that he first learned of the proposed closing of plaintiff's service station from Tom Cazmey, the area manager for Mobil, who saw the sign when driving by the station on November 24, 1980. (N.T. at 90, 107). On that same day, when the station was closed, both Mr. Woolfolk and Mr. Cazmey went to plaintiff's service station to photograph the sign and some Jartran rental trucks, which were the source of another controversy between the parties. (N.T. at 108–09). Mr. Woolfolk further testified that Mr. Cazmey, for whom he worked, told him that the photographs were for "documentation" and that he was not to discuss the sign or the proposed closing with Mr. Wesley. (N.T. at 108–09). Consequently, when he visited Mr. Wesley the next day, he did not mention either the sign, the proposed closing or the photographs he had taken. (N.T. at 109).

Donald Hotsenpiller, Mobil's sales manager for the Philadelphia District, also testified at the hearing. He stated that on or about November 24, 1980, Tom Cazmey informed him about the sign appearing in the window of Mr. Wesley's station office.

Upon receiving this information, Mr. Hotsenpiller instructed Mr. Cazmey that Mobil's representatives should not "contact" or "communicate" with Mr. Wesley concerning his intention to close his station for eleven days. (N.T. at 130). During cross-examination, the following exchange took place between plaintiff's counsel and Mr. Hotsenpiller:

Q: Did you at any time intend to use the closing as grounds for nonrenewal of his lease?

A: At that time if he elected to violate the PMPA, I would recommend, which I did, to terminate his lease.

Q: Wasn't the real reason that you told Mr. Cazmey not to tell Mr. Wesley was to be sure he closed so that you would have the grounds for nonrenewal?

A: No, that's not right.

(N.T. at 132).

Mobil argues that its conduct, upon learning of Mr. Wesley's intention to close his station, does not prohibit it from refusing to renew because of the closing. Relying on the general principle of law that mere silence is not a basis for estoppel unless the party has a duty to speak, e. g., Brown v. Haight, 435 Pa. 12, 255 A.2d 508, 512 (1969), defendant contends that it had no duty to warn Mr. Wesley that if he closed his station for eleven days as advertised in the sign posted at his station, his franchise would not be renewed, and therefore plaintiff has no grounds for estoppel.

I accept defendant's characterization of the law of estoppel by silence as well as its claim that it had no duty, in the strict sense of that word, to warn plaintiff about potential violations of his agreement with defendant. However, in my view the record in this case, after hearing on the motion for preliminary injunction, sufficiently discloses more than mere silence or inaction on the part of Mobil; there is some evidence that suggests affirmative misleading. Mr. Woolfolk and Mr. Hotsenpiller testified that upon learning of plaintiff's intention to shut his station, they decided not to discuss the matter with him, thus concealing the

fact that they intended to use the closing as a ground for nonrenewal under PMPA. (*See* Mr. Hotsenpiller's remarks, N.T. at 132). Instead, Mr. Cazmey and Mr. Woolfolk went to plaintiff's station when it was closed and took photographs of the sign for "documentation." Thereafter, according to his own testimony, Mr. Woolfolk visited with and talked to Mr. Wesley but did not tell him that he had taken photographs of the sign or that Mobil would not renew Wesley's franchise if he closed his station from November 27, 1980 to December 7, 1980. Finally, there is the testimony of Mr. Wesley that the Mobil representative not only did not object to the closing but wished him a good vacation.

As I have stated previously, Mobil did not have a duty to forewarn Mr. Wesley about potential violations by him of either the franchise agreement or the PMPA. However, its decision not to renew the franchise must be evaluated as to reasonableness, taking into consideration any evidence of ambiguous words or conduct on its part which may have misled plaintiff.

It is clear from the present record that the relationship between plaintiff and defendant has been a troubled one for some time. It also appears that Mr. Wesley has contributed to the difficulties. Nonetheless, I believe that it can reasonably be argued that the conduct of Mobil representatives led Mr. Wesley to believe that his plan to close the station during his vacation would be tolerated by the company. Accordingly, I find that at this time Mobil is not entitled to summary judgment in this case. I also find that as the record now stands plaintiff is entitled to a preliminary injunction temporarily preserving the status quo.

The parties disagree about what standard governs the preliminary injunction requested in this case. It is plaintiff's contention that the applicable standard is that set forth in Section 105(b)(2) of the PMPA. This section directs a court to grant a franchisee's request for a preliminary injunction if the franchisee shows that the franchise relationship has been terminated or not re-

newed, and "there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation." 15 U.S.C. § 2805(b)(2). In addition, the court must balance the potential hardships. If the hardships imposed upon the franchisor by the issuance of an injunction would be less than those which would be suffered by the franchisee in the absence of such relief, the court should grant the preliminary injunction. Under the PMPA, in an action for preliminary injunction brought by the franchisee, the franchisor has the burden of going forward, demonstrating that the termination or nonrenewal was permissible under the Act and that it has complied with the Act's notice requirements.

Defendant argues that the PMPA standard is not applicable here because Section 105(b)(4) also provides:

[t]he court need not exercise its equity powers to compel continuation or renewal of the franchise relationship if such action was commenced ... more than 90 days after the date on which notification pursuant to Section 104(a) was posted or personally delivered to the franchisee.

Plaintiff filed this complaint 104 days after receiving notification from Mobil that his franchise would not be renewed. Therefore, in defendant's view, in order to obtain a preliminary injunction, plaintiff must meet the traditional standard governing injunctive relief, which is a stricter test.

In this Circuit, in order to obtain a preliminary injunction under the traditional standard, the moving party must show (1) a reasonable probability of eventual success in the litigation, and (2) that he will be irreparably harmed *pendente lite* without such relief. In addition, the court should take into account, whenever relevant, the possibility of harm to other interested persons from the grant or denial of the injunction and the public interest. *Constructor's Association of Western Pennsylvania v. Kreps,* 573 F.2d 811, 815 (3d Cir. 1978).

Assuming arguendo that the stricter standard advocated by defendant governs, I still find that plaintiff is entitled to a pre-

232

liminary injunction. As Mr. Wesley has offered evidence that his reliance on Mobil's words and conduct was arguably reasonable, he has shown a reasonable probability of success on the merits. Plaintiff also has established the requisite irreparable harm: the business that he has developed over the years at his service station represents a unique business opportunity, and its loss cannot be adequately compensated for in damages. As to the other two factors to be considered by the court, I see no possibility of harm to either other parties or to the public interest as a result of the grant of the preliminary injunction. On balance, Mobil will suffer less harm as a result of a preliminary injunction preserving the status quo than Mr. Wesley would suffer if such relief were denied. Accordingly, I enter the attached order denying defendant's motion for summary judgment and granting plaintiff's motion for a preliminary injunction.