**In re Keith E. PEREAU, Debtor.**

**Bankruptcy No. 83–609–BK–J–GP.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 13, 1984.

Albert H. Mickler, Jacksonville, Fla., for debtor.

A. Graham Allen, Jacksonville, Fla., for Amoco Oil.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER DENYING MOTION FOR RELIEF FROM STAY

GEORGE L. PROCTOR, Bankruptcy Judge.

This matter is before the Court on Amoco Oil's motion for relief from the automatic stay of 11 U.S.C. § 362. Amoco seeks to refuse to renew a lease and dealer supply agreement with respect to a service station on Emerson Street in Jacksonville with the debtor. The agreement, by its terms, will terminate on July 31, 1984.

In the absence of some overriding provision to the contrary, there would be nothing in the automatic stay compelling Amoco to remain in a contractual relationship with Pereau after the expiration of the contract. Because, however, the contractual relationship is between a petroleum refiner (Amoco) and a distributor (the debtor) their contractual relationship is to a large degree governed by Subchapter I of 15 U.S.C. 2801 et seq., the Petroleum Marketing Practices Act, which Subchapter deals with franchise protection. Section 2802(a) states the general proposition that a refiner may not refuse to renew a contractual relationship at the expiration of its term except under certain enumerated conditions and then only upon timely and proper notice to the franchise. Amoco relies on § 2802(b)(2)(C) which permits non-renewal upon occurance of

> ... an event which is relevant to the franchise relationship and as a result of which ... non-renewal of the franchise is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence-(i) not more than 120 days prior to the date on which notification of ... non-renewal is given ....

Subsection (c) defines the event described in subsection (b)(2)(C) as including, (2) declaration of bankruptcy or judicial determination of insolvency of franchisee, and (8) failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled.

██ With respect to Amoco's argument that the debtor's Chapter 11 filing constitutes sufficient cause not to renew, we find that Amoco did not give notice as required by § (b)(2)(A) of the Subchapter of intent not to renew the franchise and dealer service agreement. It is apparent from the record that no notice of intent not to renew was given until well after 120 days from the order for relief in the debtor's bankruptcy case, at which time Amoco, as a creditor, learned of the filing. Amoco does not argue that it gave notice within 120 days of its first knowledge having of bankruptcy but rather argues that each day that a franchisee is in bankruptcy constitutes a separate act under subsection (b)(2)(C) and thus that notice given within 120 days of any day that the franchisee is a debtor in bankruptcy court, complies with the statute. We cannot adopt this line of

reasoning. The statute is explicit to the effect that notice must be given no longer than 120 days after the franchisor *first* learned of the behavior on the basis of which it wishes not to renew the relationship. There can be no doubt of when Amoco first learned of the debtor's having filed bankruptcy nor can Amoco argue that the debtor's conduct was in any way qualified or ambiguous.

The question of whether the debtor failed to give Amoco timely payments of amounts due does not appear to contain a notice problem but clearly raises issues of whether a material default existed and, assuming that it did, of Amoco's acquiescence.

Amoco presented two witnesses who had dealt with the debtor's orders and accounts since the filing of his petition. Their testimony established that since Pereau had filed a Chapter 11 petition he had been placed on a payment-on-delivery basis by Amoco and that the only forms of payment that Amoco would accept in return for gasoline deliveries were cashiers' checks combined with credit card slips collected from customers. Their testimony gave no indication that any motive other than the filing of a bankruptcy petition existed for Pereau being placed on such a basis, i.e. there was no suggestion that Amoco had had difficulty being timely paid by Pereau under the credit arrangement which they previously had and which is customary with Amoco's dealers. The testimony indicated, and Pereau did not contest, that on some days the total of credit card slips and the cashiers' check added up to less than the wholesale price of the gasoline he had ordered, which price had been quoted to him by Amoco the previous evening and sometimes amounted to more, but that the over and under-payments cancelled each other out over time so that at the end of any given month, no amount was past due. Amoco does not maintain otherwise.

While Amoco forcefully argues that the magnitude or materiality to the refiner's interest of conduct under § (b)(2)(C) is not a factor which it is proper for the Court to consider, the Court finds that the language of the provision, i.e. its specific reference for conduct which makes it *reasonable* for the franchisor not to renew, invalidates any argument that inconsequential defaults are intended by the statute to constitute a basis for non-renewal.

■ In any event, we do not find that Amoco declined to operate under the system of "approximate cash on delivery" which evolved between it and Pereau or that it did so much as object in writing to the manner in which Pereau was carrying out the cash-on-delivery system. In *Wesley v. Mobil Oil Corporation*, 513 F.Supp. 227 (1981), the Court denied the franchisor's motion for summary judgment because it found that the franchisor had acquiesced in the dealer's behavior on the basis of facts less favorable to the dealer than we consider those in this case to be.

In the context of reasonableness, we also seriously question whether the franchisee's inability to operate correctly under a system of the franchisor's own devising, which according to testimony was not applied at any other station in the metropolitan area, is not due to the inherent unreasonableness of calling for strict compliance under the terms of the payment system on which Amoco placed Pereau. The manager of Pereau's station testified that policy requiring a cashiers' check every day made it virtually impossible to make accurate payments. While we believe that the manager might, with some effort, have been able to improve his accuracy record, we believe that the system under which the station must operate is cumbersome at best.

For these reasons, the Court finds that Amoco is barred by the Petroleum Marketing Practices Act from refusing to renew its lease and agreement with the debtor, and that to the extent that the automatic stay is applicable to the matters raised in the motion it shall remain in effect. The motion is Denied.