J-A01037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CHARLES S. WARREN, CHARLES A. WARREN, AND PATRICIA SHAW WARREN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| EQUITABLE GAS COMPANY, EQUITRANS, EQUITABLE PRODUCTION COMPANY, AND EQUITRANS, LP, FORMERLY EQUITRANS PRODUCTION COMPANY, | |
| Appellees | No. 697 WDA 2014 |

Appeal from the Order entered April 22, 2014,
in the Court of Common Pleas of Greene County,
Civil Division, at No(s): AD 262 of 1991

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                        **FILED FEBRUARY 4, 2015**

Oil and gas rights lessors, Charles S. and Charles A. Warren, and Patricia Shaw Warren, ("Appellants"), appeal from the trial court's order granting the motion for summary judgment filed by Equitable Gas Company, Equitrans, Equitable Production Company, and Equitrans, LP, formerly Equitrans Production Company, (collectively "Equitable").  We affirm.

The trial court recounted the factual and procedural background of this action as follows:

> [Appellants] are the owners of a tract of land located in Center, Franklin, and Morris Townships containing 307.89 acres, with exceptions.  When Charles A. Warren first acquired the tract, it had already been made subject to a lease dated August

25, 1966, from E.R. Closser and Margaret Closser to [Equitable]. This lease provides in relevant part:

Lessor…hereby leases unto the lessee, for its exclusive possession and use for the purpose of exploring and operating for Natural Gas and Petroleum Oil, all that certain tract…containing Three Hundred Eight --- (308) acres, more or less.

THE LESSEE shall have during the term of this lease the exclusive right to drill upon said land for natural gas and petroleum oil including the right to clean out, drill deeper and operate any abandoned or plugged well or wells located on said land for the production of gas and/or oil, or the use of said wells for the storage of gas, subject to all the terms and conditions of this lease…; to inject gas for storage purposes or repressuring in the substrata, and to remove same therefrom by pumping or otherwise; the right to construct and maintain piplelines…in connection with the transportation of gas and oil produced from said land or for the storage of gas therein;…

TO HAVE AND TO HOLD the said land and the privileges for the said purposes for a period of Ten (10) Years from September 1, 1967, and as long thereafter commencement of operations as said land is operated for the exploration or production of natural gas, or as gas or oil is found in paying quantities, or stored thereunder, or as long as said land is used for the storage of gas or the protection of gas storage on lands of the general vicinity of said land. The Lessee shall be the sole judge of when and if said land is being used for the storage of gas or the protection of gas storage on lands of the general vicinity of said land.

AND IT IS AGREED, that the Lessee shall pay to the Lessor for each and every well drilled upon said land, which produces Natural Gas only, in a quantity sufficient for the Lessee to convey to market, or any well used in connection with the storage of gas under said land, a money royalty computed at the rate of Three Hundred Dollars per annum…and unless a well is previously completed upon said land, the Lessee shall, beginning on the 1st day of September, 1967, and continuing until a well is completed…or this lease is used for the storage of gas or

the protection of gas storage on lands in the general vicinity of said land, pay to the Lessor quarterly in advance, the sum of Seventy-seven and No/100…($77.00) Dollars, as a carrying rent, in lieu of development…

When said land is used for the storage of gas (but there is no well on said land), or for the protection of gas storage on lands in the general vicinity, the Lessee covenants and agrees to pay to the Lessor, quarterly, in advance, his annual storage rent…Six Hundred Sixteen and No/100…($616.00) Dollars at the rate of Two Dollars per acre per annum until a well is completed or this lease is surrendered.

In 1991, [Appellants] as succesors to the original lessors, filed a Complaint alleging that [Equitable] "ha[s] not taken any action to fulfill the covenants in Lease No. 2394-1 to produce native gas and or oil on [Appellants'] property." The Complaint asked for money damages and rescission of the lease.

After a long, long period of inactivity, an Amended Complaint was filed by new counsel on June 21, 2011. This version sought to explain the addition of additional defendants related to the original defendants but still demanded the same relief for the same reason. [Equitable] filed an Answer and New Matter and Counterclaim, requesting a declaratory judgment that the lease is valid and in effect. Much discovery followed. In June of 2013, [Appellants] moved for summary judgment. [Equitable] responded and filed their own Motion for Summary Judgment to which [Appellants] responded. Both sides have filed briefs in support of their positions and we have heard oral argument.

Trial Court Opinion, 4/22/14, at 1-3.

On April 21, 2014, the trial court issued an order, which was docketed on April 22, 2014, granting Equitable's motion for summary judgment and denying Appellants' motion for summary judgment. Appellants filed this timely appeal. Both the trial court and Appellants have complied with Pa.R.A.P. 1925.

- 3 -

Appellants present the following issues for our review:

WHETHER THE COURT ERRED AS A MATTER OF LAW IN FAILING TO FIND THAT THE GRANTING CLAUSE OF THE LEASE WAS FOR PRODUCTION OF NATURAL GAS AND OIL AND [THAT] STORAGE [WAS] A SECONDARY PURPOSE THAT COULD NOT DELAY PRODUCTION INDEFINITELY?

WHETHER THE COURT ERRED AS A MATTER OF LAW IN FAILING TO FIND THAT THE LEASE WAS SEVERABLE BETWEEN PRODUCTION AND STORAGE WHEN THE PRIMARY PURPOSE OF THE LEASE WAS "EXPLORING AND OPERATING FOR NATURAL GAS AND PETROLEUM OIL" AND SEPARATE CONSIDERATION WAS GIVEN FOR BOTH PRODUCTION AND STORAGE?

WHETHER THE COURT ERRED AS A MATTER OF LAW IN FAILING TO FIND THAT [EQUITABLE] BREACHED THE IMPLIED COVENANT TO OPERATE FOR NATURAL GAS AND OIL EVEN IN A DUAL PURPOSE LEASE BY FAILING TO DRILL FOR OR PRODUCE NATURAL GAS AND OIL DURING THE INITIAL LEASE TERM OR FOR OVER THIRTY-FIVE YEARS THEREAFTER?

WHETHER THE COURT ABUSED ITS DISCRETION BY FAILING TO FIND THAT [EQUITABLE] BREACHED THE LEASE BY ITS FAILURE TO MAKE ANY LEASE PAYMENTS FOR OVER FOUR YEARS?

WHETHER THE COURT ERRED AS A MATTER OF LAW IN FAILING TO CONSIDER WHETHER LEASE TERMS COULD FAIRLY BE CONSTRUED UNDER THE FACTS OF THIS CASE TO PERMIT [EQUITABLE] TO HOLD DEVELOPMENT RIGHTS FOREVER BY PAYING NOMINAL STORAGE PAYMENTS OF TWO DOLLARS PER ACRE TO AN UNSCHOOLED FARMER OR WHETHER SUCH AN INTERPRETATION WAS UNCONSCIONABLE?

WHETHER THE COURT ERRED AS A MATTER OF LAW IN FAILING TO FIND THE LEASE TERMS AMBIGUOUS, REQUIRING A FAVORABLE CONSTRUCTION FOR LESSOR THAT MERE STORAGE ALONE COULD NOT HOLD PRODUCTION RIGHTS INDEFINITELY WHERE LESSEE DRAFTED THE LEASE?

Appellants' Brief at 4-5.

We recognize:

Our scope of review … [of summary judgment orders] … is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*Alexander v. City of Meadville,* 61 A.3d 218, 221 (Pa. Super. 2012) (internal citation omitted).

Instantly, Appellant's first, second, third, fifth, and sixth issues assert that the trial court erred in granting summary relief in favor of Equitable based on the trial court's interpretation and construction of the lease. Appellants contend that the trial court erred in its construction of the lease, in determining that the lease's gas storage and production provisions were not severable, in concluding that Equitable did not breach an implied

covenant to produce gas, in not deeming the lease unconscionable, and in determining that the lease was not ambiguous. Based on our review of the record and applicable jurisprudence, we cannot agree with Appellants' claims of error. We find that the trial court correctly determined that the lease allowed for gas to be stored on the property, *as well as* produced, such that Equitable's continued gas storage without gas production activities allowed for the lease's term to continue, even in the absence of gas production.

The trial court reasoned:

> The Clossers, the original lessors, owned the land in fee simple and had the right to convey it to anyone in whatever complete or partial fashion that they wished. They chose to lease the oil and gas within and under their land to [Equitable] on August 25, 1967. A lease of oil and gas in the ground is a sale of an estate in fee simple until all of the available oil and gas are removed, or upon some other specified act. The lessor retains only an interest in the rents and royalties which is personal property. Snyder Brothers, Inc. v. Yohe, 676 A.2d 1226 (Pa. Super. 1996). The interest granted to the lessee is a fee simple determinable. The lessor retains a reversionary interest. Higbee Corp. v. Kennedy, 428 A.2d 592 (Pa. Super. 1981).
>
> The specified events that must occur for the oil and gas to revert in this case to [Appellants] are found in the Habendum clause which sets forth the term of the lease. The lease first establishes a primary terms of ten years. If the lessee did nothing and if it paid to the lessors "carrying rent" of one dollar per acre per year the lease would have expired after ten years, on August 31, 1977, and on that date the oil and gas would have reverted to [Appellants]. But something else did happen; the lessee began storage operations on the land, and those operations are one of the events that permit lessee to retain its interest in oil and gas, because the lease extended " …for and during a period of Ten (10) Years from September 1, 1967, and … as long as said land is used for the storage of gas or the

protection of gas storage on lands in the general vicinity of said land."

Trial Court Opinion, 4/22/14, at 4-5.

The trial court's analysis is supported by our prior decision in **Pomposini v. T.W. Phillips Gas and Oil Co.,** 580 A.2d 776 (Pa. Super. 1990). In **Pomposini,** we denied a lessee's right to store, rather than produce gas, and explained:

> The Supreme Court of Pennsylvania has observed that, "the traditional oil and gas lease is far from the simplest of property concepts." *Brown v. Haight,* 435 Pa. 12, 15, 255 A.2d 508, 510 (1969). A conveyance of the subsurface oil and gas results in a severance of the mineral interests from the surface rights and conveys to the grantee a corporeal interest in the oil and gas underlying the grantor's property. *Smith v. Glen Alden Coal Co.,* 347 Pa. 290, 299, 32 A.2d 227, 232 (1943); *Barnsdall v. Bradford Gas Co.,* 225 Pa. 338, 343, 74 A. 207, 208 (1909). Here, however, [the lessor] merely demised an interest in the oil and gas, albeit for as long as there remained oil and gas to be produced in paying quantities. The severance of the mineral rights under these circumstances must be narrowly construed. The right to extract gas did not include the right to use the cavernous spaces owned by the lessor for the storage of gas in the absence of an express agreement therefor. *Cf. Chartiers Block Coal Co. v. Mellon,* 152 Pa. 286, 296, 25 A. 597, 598 (1893); *Emeny v. U.S.,* 188 Ct.Cl. 1024, 412 F.2d 1319, 1323, (1969). *See also*: *Ellis v. Arkansas Louisiana Gas Co.,* 450 F.Supp. 412, 420 (E.D.Okla.), *aff'd,* 609 F.2d 436, *cert. denied,* 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1978) and McGinnis, *Some Legal Problems in Underground Gas Storage,* 17 Institute on Oil & Gas Law & Taxation 23, 51 (1966) (right to store should not be implied or presumed in the absence of clear evidence of such intent). Because the lessee did not acquire an estate in the caverns and was not authorized to store gas on plaintiff's land, the trial court correctly held that the lessee was liable for the unauthorized storage of gas on [lessor's] land.

***Pomposini,*** 580 A.2d at 778-779. In contrast to ***Pomposini,*** the instant lease did have "an express agreement" for the storage of gas, such that the trial court did not err in finding that Equitable could use the land for that sole purpose pursuant to the lease, even though the lease also allowed for gas production.

We further find that the trial court aptly determined that the provisions in the lease's granting clause concerning the production of gas and the storage of gas should not be severed, such that Equitable could proceed in only using the land for gas storage. The trial court explained:

> [T]he introductory phrase [within the lease stating] "for the purpose of exploring and operating for Natural Gas" does not create a severable lease, nor does it require the lessee to produce oil and gas or suffer loss of the lease for failure to do so. As has been said many times, the intent of the parties controls. Obviously, at the time of the execution of the lease in 1967 the lessee, [Equitable], was much interested in storage rights. Storage rights are mentioned in five separate paragraphs in the lease. It is difficult to believe that E.R. Closser and Margaret Closser signed the lease without being acutely aware that storage rights were repeatedly discussed. The fact that in one place in the lease production rights were mentioned where storage rights were not is a slender reed on which to base an argument that the lease was intended to be severable.

Trial Court Opinion, 4/22/14, at 13-14. Our Supreme Court's decision in ***Jacobs v. CNG Transmission Corp.,*** 772 A.2d 445 (Pa. 2001), supports the trial court's rationale in determining that the contract was not severable. The High Court explained:

> [T]here is no bright line rule requiring that a court first find that the intent of the parties is unclear as to entirety/severability before it may look to factors such as the conduct of the parties

- 8 -

and the character of the consideration to determine whether an agreement is entire or severable. The central task is to ascertain the intent of the parties. That intent may be apparent from the explicit language of the contract,… or it may be obvious from a "construction" of the agreement, including the nature of the consideration[.] In short, principles of construction may reveal the intent of the parties no less than the actual language addressing entirety/severability. Thus … this Court holds that, absent express language that a contract is entire, a court may look to the contract as a whole, including the character of the consideration, to determine the intent of the parties as to severability and may also consider the circumstances surrounding the execution of the contract, the conduct of the parties, and any other factor pertinent to ascertaining the parties' intent. The court need not make a specific predicate finding of ambiguity before undertaking the inquiry - indeed, if the contract were crystal clear as to the parties' intent, severability likely would not be a contested issue.

***Jacobs,*** 772 A.2d at 452. Here, the lease does not specifically state that the provisions are severable. Consonant with ***Jacobs***, the trial court considered whether the gas storage provisions were severable from the gas production terms by examining the lease's language, the multiple gas storage provisions in the lease, the circumstances surrounding the lease's execution, and the discernible intent of the original contracting parties which could be derived from the lease. In doing so, the trial court found that the contract was not severable. We find no error by the trial court in reaching this determination based on our own review of the lease and the record. ***See Southwestern Energy Production Co. v. Forest Resources, LLC,*** 83 A.3d 177, 187 (Pa. Super. 2013) (internal citation omitted) ("It is well-settled that clauses in a contract should not be read as independent agreements thrown together without consideration of their combined effects.

Terms in one section of the contract, therefore, should never be interpreted in a manner which nullifies other terms in the same agreement.").

Likewise, we do not find that Equitable breached an implied covenant to produce, rather than to store, gas on the property. Our Supreme Court held:

> An implied covenant to develop the underground resources appropriately exists where the **only** compensation to the landowner contemplated in the lease is royalty payments resulting from the extraction of that underground resource. **Where, however, the parties have expressly agreed that the landowner shall be compensated if the lessee does not actively extract the resource**, then the lessee has no implied obligation to engage in extraction activities.

*Jacobs,* 772 A.2d at 455 (emphasis supplied). Given that the lease expressly provides for separate rates to be paid for production and for gas storage, we conclude that the trial court did not err in determining that the lease did not obligate Equitable to produce gas from the land.

We further discern no error in the trial court's construction that Equitable's ongoing gas storage activities extended the lease term to the present day. Specifically, the trial court indicated "[b]ecause we find … that the lease is not severable and because the land has been used for the storage of gas or for the protection of the storage of gas since its primary term, the lease continues to this day." Trial Court Opinion, 4/22/14, at 13. We agree with the trial court, and recognize:

> [A] lease is in the nature of a contract and is controlled by principles of contract law. *J.K. Willison v. Consol. Coal Co.,* 536 Pa. 49, 54, 637 A.2d 979, 982 (1994). It must be

construed in accordance with the terms of the agreement as manifestly expressed, and "[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement." *Id.* (citations omitted). Further, a party seeking to terminate a lease bears the burden of proof. *See Jefferson County Gas Co. v. United Natural Gas Co.,* 247 Pa. 283, 286, 93 A. 340, 341 (1915).

*T.W. Phillips Gas and Oil Co. v. Jedlicka,* 42 A.3d 261, 267 (Pa.2012).

***Caldwell v. Kriebel Resources Co., LLC,*** 72 A.3d 611, 614 (Pa. Super. 2013). Here, the trial court interpreted the plain meaning of the lease's granting clause and correctly construed the lease as continuing as long as Equitable either produced or stored gas on the land.

Further, we are not persuaded by Appellants' argument that the trial court's lease interpretation and construction was unconscionable. Appellant correctly cites the following precepts relevant to a determination of unconscionability:

Unconscionability is a "defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." Germantown Mfg. Co. v. Rawlinson, 491 A.2d 138, 145 (Pa. Super. 1985) (quoting D. Dobbs, Handbook on the Law of Remedies 707 (1973)). The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability. Bishop v. Washington, 480 A.2d 1088, 1094 (Pa. Super. 1984).

In evaluating claims of unconscionability, courts generally recognize two categories, procedural, or "unfair surprise," unconscionability and substantive unconscionability. See Ferguson v. Lakeland Mut. Ins. Co., 596 A.2d 883, 885 (Pa. Super. 1991); Bishop, 480 A.2d at 1095; Germantown, 491 A.2d at 145-46. Procedural unconscionability pertains to the process by which an agreement is reached and the form of an

agreement, including the use therein of fine print and convoluted or unclear language. See E. Allan Farnsworth, Contracts 4.28 (2d Ed. 1990). This type of unconscionability involves, for example, "material, risk shifting contractual terms which "are not typically expected by the party who is being asked to 'assent' to them." Germantown, 491 A.2d at 145-146. Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. See Id., at 145-147; Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1068 (Pa. Super. 1992). Thus, "unconscionability requires a twofold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." Bensalem Township v. International Surplus Lines Ins. Co., 38 F.3d 1303, 1312 (3d Cir.1994) (quoting Worldwide Underwriters Ins. Co. v. Brady, 973 F.2d 192, 196 (3d Cir. 1992)).

Appellants' Brief at 31-32. Appellants maintain "[t]here is no evidence here that the lessor was anything other than a landowner, a sheep and cattle farmer, unschooled in the ways of oil and gas leases, while the lessee was and is in the business of the same." *Id.* at 33. However, Appellants concede, as they must, that "it is true that inequity in bargaining power, alone, is not a basis upon which to invalidate a clause in the contract[.]" *Id.* at 34. Appellants assert "there can be no question that lessors could not have understood and assented to what would boil down to a storage only lease." *Id.* However, as Equitable states, and our review of the record confirms, Appellants' deposition testimonies belie this argument:

The Oil and Gas Lease at issue (the "Lease") was executed on August 25, 1967, by lessors E.R. and Margaret Closser and lessee Equitable Gas Company. R. 540a. The Clossers were the in-laws of Plaintiff Charles A. Warren and the grandparents of Plaintiff Charles S. Warren. R. 549a. [Appellants] have been

deeded the property subject to the Lease (the "Property"). R. 61a-69a. Equitable Production Company and Equitrans, L.P. ("Equitable"), through assignments, are the current Lessees. R. 556a.

The Clossers are deceased, and never gave deposition testimony in this matter. R. 787a. Charles S. Warren admitted that he never spoke with the Clossers about the Lease. R. 787a (C.S. Warren Dep. 13:2-4). He also admitted he has no information about the intent of the parties when they entered into the Lease, and does not know if "storage of gas was an important element of the lease when it was entered into in 1967." R. 792a (C.S. Warren Dep. 48:14-24). Nor does his wife, Plaintiff Patricia Warren, have any insight. R. 850a (P.S. Warren Dep. 9:10-13, 9:23-24, admitting that outside of what she had been told by her husband, she had knowledge of no relevant facts and had not even read the Lease).

Similarly, Charles A. Warren admitted that he had never had any discussions with the Clossers regarding the Lease or oil and gas operations on the Property. R. 853a (C.A. Warren Dep. 7:23-8:3). He too possesses no information about the Clossers' intentions when they signed the Lease. R. 855a (C.A. Warren Dep. 16:20-23). He does not know "whether production of gas was a priority at the time the lease was entered into." Id. (C.A. Warren Dep. 17:5-11). He admitted he has "[n]o idea what the purpose of the Lease was. Id. (C.A. Warren Dep. 16:24- 17:4); see also R. 858a (C.A. Warren Dep. 30:2-3, same).

Equitable's Brief at 2-3. Thus, we are not persuaded that Appellants have met their burden of proving that the lease was unconscionable.

As to Appellants' fourth issue, we find that the record refutes Appellants' contention that the trial court erred in not finding that Equitable breached the lease "by its failure to make any lease payments for over four years." Appellants' Brief at 4. The trial court observed that after Charles A. Warren became a widower, and despite repeated requests from Equitable, Charles A. Warren did not "send a copy of his [new] deed [to Equitable

following his wife's death], nor did he furnish a copy of his taxpayer identification number." Trial Court Opinion, 4/22/14, at 15. Because of Charles A. Warren's inaction, Equitable withheld payments, which the trial court found "prudent under the circumstances, and … not a basis for forfeiture of the lease." *Id.* at 16. We agree with the trial court. *See Brakeman v. Potomac Insurance Company,* 344 A.2d 555, 559 (Pa. Super. 1975) ("The law abhors a 'forfeiture' almost as devoutly as nature abhors a vacuum."). After Equitable secured a copy of the deed, Equitable resumed payments. Having played a role in not receiving monies from Equitable, equity denies Charles A. Warren the forfeiture he is requesting. *See First Commonwealth Bank v. Heller*, 863 A.2d 1153, 1159 (Pa. Super. 2005) (internal citation omitted) ("[C]ourts [asked to grant equitable remedies] will not relieve a party from the consequences of error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised.").

In sum, based on our review of the record and applicable jurisprudence, we affirm the trial court's order granting summary judgment in favor of Equitable.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/4/2015</u>